[Civil No. 3116.   Filed June 30, 1931.]

[300 Pac. 1011.]

In the Matter of the Application of LOUISE MARSHALL for a Writ of Habeas Corpus.

Messrs. Knapp & Boyle, Mr. B. G. Thompson, Messrs. Kingan & Darnell and Mr. Frederic G. Nave, for Petitioner.

Mr. Wm. G. Hall, County Attorney, and Mr. Clarence E. Houston and Mr. Carlos G. Robles, Deputy County Attorneys, for the State.

ROSS, J.—This is an original application for a writ of *habeas corpus* made to obtain bail.

Upon a complaint charging the petitioner with having murdered one Thomas K. Marshall, the petitioner was on May 27, 1931, by the Honorable EDWIN F.

JONES, Justice of the Peace of Tucson precinct, Pima county, acting as a committing magistrate, given a preliminary hearing and bound over to the superior court of Pima county to answer said charge, the magistrate admitting her to bail in the sum of $20,000. On May 28th a bail bond, with two sureties, conditioned as provided by statute, was presented to the magistrate and by him approved. On the same day the county attorney of Pima county filed an information in the superior court of said county against the petitioner charging her with the crime of murder. Subsequent to filing the information, but on the same day, the county attorney filed a motion for an order to cancel the bail bond and to remand defendant to the custody of the sheriff. June 2d the petitioner was arraigned and entered a plea of not guilty. On that day the Honorable FRED W. FICK-ETT, Judge of the superior court of Pima county, feeling, as we understand it, that the bail was insufficient because the wives of the sureties had not signed, ordered petitioner to make and execute a new bond in the sum of $20,000. Such new bond with sureties was on that day duly approved by said judge and filed.

On the 3d of June, against the protest of the petitioner that the court had no jurisdiction to cancel the bond and re-incarcerate her, because the order of the committing magistrate committing the defendant was *res judicata,* and because the motion did not state facts sufficient to warrant the canceling of said bond and the remanding of petitioner to the custody of the sheriff, the judge of the superior court aforesaid proceeded to take evidence in support of the motion. The evidence so heard and introduced consisted of the transcript of the testimony taken before the Honorable EDWIN F. JONES, Justice of the Peace of Tucson precinct, upon the preliminary hearing, and at the conclusion thereof, with no other evidence, the

trial court made an order canceling, revoking and annulling petitioner's bail bond and directing the issuance of a bench warrant "remanding defendant to the custody of the sheriff." The sheriff's return shows that he has the petitioner in his custody under and by virtue of a bench warrant issued out of the superior court of Pima county on June 3, 1931.

The petitioner claims that the order of the committing magistrate, made at the preliminary hearing, granting bail, was *res judicata* as to the state, and that the order of the judge of the superior court, made subsequent to the filing of the information, directing that she be imprisoned pending the trial, was without authority of law and void. She also claims that the transcript of the testimony taken at the preliminary trial and considered by the said judge of the superior court upon the motion to cancel bond and recommit fails to show that the proof was evident or the presumption great, and that therefore she was entitled to bail.

Succinctly, the question is: Can the superior court, or the judge thereof, under the law of this state after an information has been filed against a party bound over to that court and left at large on bail, examine the testimony taken at the preliminary hearing, set aside the committing magistrate's conclusion on the right to bail, and thereupon order the accused committed to jail without bond.

Before trying to answer this question, we state that the settled rule in this jurisdiction, by the Constitution, the statutes and the decisions, is that all persons accused of crime are before conviction as a matter of right entitled to have their liberty on furnishing good and sufficient bail, except in capital cases where the proof is evident or the presumption great. *Matter of Application of Haigler*, 15 Ariz. 150, 137 Pac. 423. The charge in this case is capital, since

the punishment for murder may be death. Under our criminal laws one may not be charged by information with the commission of a felony until after he is given a preliminary hearing before one of the following officers, to wit: A judge of the Supreme or a superior court, or a justice of the peace, or a police judge of an incorporated city or town acting as a magistrate. Section 4927, Rev. Code 1928. It is said that the purpose of a preliminary hearing is threefold:

"(1) To inquire concerning the commission of crime and the connection of accused with it, in order that he may be informed of the nature and character of the crime charged against him, and, if there is probable cause for believing him guilty, that the state may take the necessary steps to bring him to trial; (2) to preserve the evidence and keep the witnesses within the control of the state; and (3) to determine the amount of bail." 16 C. J. 313, § 556.

While the magistrate's powers are judicial in their nature, the preliminary hearing is not a trial. Such hearing is only had in cases over which the magistrate has no jurisdiction. The defendant is not put in jeopardy. If he is discharged by one committing magistrate, he may be re-arrested and his case reexamined by the same or another magistrate. If he is held over upon a preliminary hearing, the policy of the law is against his being re-arrested and reexamined for the same offense.

The lawmakers were very careful in prescribing the steps to be taken against one charged with crime, zealous in guarding his personal liberty by providing for the allowance of bail as a matter of course in all cases not capital, and in capital cases where the proof is not evident or the presumption great. When the offense is capital, it is explicit in the law that it is the duty of the committing magistrate in the first place to determine whether the evidence of guilt of the highest offense is of a character justifying the

allowance of bail or requiring the accused's committal without bail. If the magistrate decides that the offense is bailable, it is the contention of the petitioner that such decision fixes the status of the offense and herself as to the right to bail throughout, until conviction, whatever the facts may be. This contention is based upon section 5000 of the Revised Code, which provides that, if a defendant, who has been admitted to bail before indictment or information, fails to give bail in an increased amount when ordered by the court, he may be committed to custody, and section 5172, which provides that he may be committed to custody by the court in the following cases: (1) When he has forfeited his bail; (2) when the bail becomes insufficient by reason of the death of a surety or sureties, or their removal from the state; or (3) "upon an indictment or information being found for felony, and the defendant is on insufficient bail, in which case the order [for his rearrest] shall specify the increased amount."

It is said these provisions of the statute clearly indicate the legislative intent to limit the power of the court to which a defendant is bound over to the duty of seeing that the bail is kept sufficient by increasing it in amount and in seeing that the sureties are responsible and adequate.

There is in the law no express provision giving the superior court, or the judge thereof, the power or right to commit a defendant without bail after indictment or information when he has been held over by the committing magistrate on bail. If the court, or judge, may disregard the order of the committing magistrate allowing bail and commit the defendant to custody, the law is silent as to the circumstances under which such power may be exercised. Can the judge, as he did in this case, act upon the identical evidence the committing magistrate did and substitute

his judgment, as to whether the offense is bailable, for the judgment of the magistrate, and commit the defendant to the custody of the sheriff when the magistrate had accepted bail, or must he take additional evidence, or may he on his own motion, and without evidence, arbitrarily order the defendant committed to the sheriff's custody? If the superior court, or judge thereof, may overturn the order of the committing magistrate allowing bail in a capital case when the latter is a justice of the peace, he may do so in a case wherein the chief justice or one of the judges of the Supreme Court or where he or any other superior court judge may have held the preliminary hearing and admitted the accused to bail. The law does not seem to have provided the superior court or a judge thereof with power to overturn the magistrate's action in allowing bail.

It has, however, vested the court or judge with power, upon an application for a writ of *habeas corpus,* to grant bail in capital cases where the proof is not evident or the presumption great, notwithstanding the magistrate may have denied bail. In other words, upon an application before the Supreme Court or a superior court or any judge of such courts showing that he is imprisoned or detained in custody on any criminal charge for want of bail, a person is entitled to a writ of *habeas corpus* for the purpose of giving bail. Sections 5250 and 5262, Rev. Code 1928. In such a case it is made the imperative duty of the court or judge when the petition is presented to grant the writ, thereafter hear the evidence on the question of bail, and in a summary manner dispose of the petitioner as justice may require. Section 5257, Id.

Bail accepted by the committing magistrate is continuing. Appearance in court to which it is returnable does not satisfy or discharge its conditions. If the defendant fails to hold himself amenable to the

orders and processes of the court, his bail may be forfeited. If the sureties die or leave the state, and he fails to supply other sureties, he may be committed to the custody of the law, or, if the court becomes convinced that the amount of the bail is inadequate, it may increase the amount, and for a failure by the defendant to file a sufficient bond he may be committed. The rule is the same whatever the grade of the offense, capital or noncapital, those in which the right to bail is absolute, and those in which the magistrate may or may not allow bail. When bail is allowed by the committing magistrate, the power of the trial court over it thereafter is limited to seeing that it is obeyed as originally given or as amended under its direction.

If the legislature had felt that in capital cases the trial court should have the right to override or ignore the magistrate's order admitting the accused to bail, it would have been an easy matter to have said so. The Constitution and laws provide when and by whom bail may be allowed, and the courts must be governed accordingly. If the law was entirely silent as to the allowance of bail, we might resort to the court's power in that regard under the common law. The law has affirmatively spoken and said what the trial court may do with reference to bail allowed by the committing magistrate. This we think, under the circumstances, is a denial to that court of the power to do anything else.

The only case we have found or to which our attention has been called in the briefs that seems to hold the contrary view is *Ex parte Cook*, 35 Cal. 107. The facts in the Cook case were that he went before a committing magistrate, waived examination, and was committed. Thereafter, upon writ of *habeas corpus*, he was admitted to bail by the county judge. After he was indicted, upon the motion of the dis-

trict attorney, the court issued a bench warrant for his arrest and committed him to the custody of the sheriff. It was contended that the court in issuing the warrant exceeded its jurisdiction. While our statutes and those of California with reference to bail are similar, it is evident that the California statutes in 1868, when the Cook decision was rendered, in vital respects were not the same as ours. For instance, it is said in that case that, if the indictment is against a defendant not in custody, but out on bail, and the indictment is for a felony, the court may nevertheless order him into custody if he be present, and, if not, may issue a bench warrant for his arrest. We have no such provision in our law. Under our statutes, the only cases in which the courts may issue a bench warrant for the arrest of the defendant are those heretofore mentioned and those where the defendant has been discharged on bail and has failed to appear to be arraigned when his personal attendance is necessary, and those cases where an indictment or information has been filed against a defendant not in custody and who has not been held to answer. Section 4995, Id. In the Cook case the court, while stating that "the statute is not, perhaps, as clear upon this question as it might be," held that, in view of the statute above referred to and other provisions, if the trial court in its judgment believed the case to be one in which bail ought not to be taken, it might order the defendant into custody, notwithstanding any bail which may have been given before the indictment was found.

If the court in the Cook case correctly states the statute law of that state, it is materially different from ours. We have no statute authorizing the court after indictment to order into custody a defendant out on bail, if he be present, and, if not, to issue a bench warrant for his arrest, as the law is stated to

be in that jurisdiction. Our section 5000, *supra,* does provide that, after an indictment or information is found, if the defendant be on bail, he may be committed to custody, "unless he give bail in an increased amount, to be specified in the order." If the defendant is present, this section says, when the order is made he must be forthwith committed; if not present, a bench warrant must be issued for his arrest. This last expression, of course, is conditioned upon his failure to give bail in an increased amount as specified in the order. It will be noticed that the California court expresses doubt of the proper construction of its statute. Our statute seems to be plain. The question as to whether the decision of a committing magistrate as to the right of a party to give bail is *res judicata* has not been decided in California. That feature of the question was not touched upon or called to the court's attention in the Cook case.

In 3 California Jurisprudence (publication of 1921), 1043, section 15, the authors make this statement:

"Whether an order admitting a prisoner to bail is *res judicata* and final as to the state and accused, except as to the amount, does not appear to have been definitely passed upon in this state. In other jurisdictions it has been held that after the right to bail has once been passed upon in favor of the accused, such question cannot be reopened to permit the prosecution to introduce evidence in rebuttal of that offered by the applicant."

See, also, 3 Ruling Case Law, 31, § 35.

The allowance of bail is a judicial act. It was within the lawful powers of the committing magistrate to grant the defendant her liberty on bail pending the determination of the question of her guilt or innocence. We do not know, and nobody knows, what a jury of twelve of her fellow-citizens may say. It may be determined ultimately that the magistrate was in error, but it cannot be said that he acted out-

side of the powers conferred upon him by the laws of the state when he admitted defendant to bail. There is a line of decisions holding that, when a court having jurisdiction enters a solemn judgment and order adjudicating and finding that a defendant is entitled to bail, such judgment and finding is binding and conclusive and *res judicata* on that question. *State* v. *Newman,* 114 Okl. 228, 245 Pac. 999. Whether this rule, as it is broadly stated, should be applied to the decision of a committing magistrate allowing bail in a capital case may be doubted, but we think that, in view of our statutes on the subject, it must have been so intended.

The legislature in effect has provided that, if the committing magistrate allows bail in a capital case, the state is bound thereby, whereas if he denies bail the accused may apply for a writ of *habeas corpus* for the purpose of obtaining bail. At first blush this would seem to be unfair to the state. One is inclined to think that, if the accused is given the right to question the order denying bail, the state should be extended the right to question the order granting bail. This, however, is a legislative matter and not one for the courts. Besides, the rule accords with the treatment extended accused persons generally. The law is that, if the defendant is poor and unable to hire counsel, the state will furnish him counsel for his defense; it will also secure for him his witnesses at the state's expense. If he is convicted, he may appeal, but, if he is acquitted of the charge against him, however clear the evidence may have been that he was guilty, the state may not appeal. Defendant may refuse to testify and the state's attorney is prohibited to comment thereon, but, if the prosecuting witness should fail to testify, the accused may comment thereon. So it is not unusual for the state to

extend favors to a defendant and deny them to the prosecution.

We have come to the conclusion that the trial court exceeded its jurisdiction when it ordered that the defendant be re-arrested and committed to the custody of the sheriff. We think the defendant was entitled to be continued at large upon the bail allowed by the magistrate, or upon the amended bail accepted and approved by the judge of the superior court, and that the court's order attempting to cancel the bail was void and of no effect.

We do not go into the question of the sufficiency of the evidence to show whether the proof was evident or presumption great, for the reason that the question was passed upon by the committing magistrate, whose decision allowing bail is final as to this court, as also the trial court.

We hold that the finding of the committing magistrate that the defendant was entitled to bail was within the magistrate's jurisdiction, and that the bail fixed and accepted by him, or the bail with the same and additional sureties substituted therefor and accepted and approved by the trial judge, is still in force and effect, and that the defendant is entitled to her liberty thereunder. If the trial court thinks the bond is insufficient in amount to secure the presence of the defendant at the trial, or that the sureties are not responsible, it has the power to increase the amount and to require new sureties.

It is our opinion that the defendant is unlawfully held in custody and that she should be discharged under the bail allowed by the magistrate or the amendment thereof accepted and approved by the trial judge.

It is accordingly ordered that the sheriff of Pima county discharge defendant from custody upon the bail heretofore given.

McALISTER, C. J., Specially Concurring.—I con-cur in the opinion of Mr. Justice ROSS. It leaves no doubt in my mind as to the correctness of the conclusion reached therein that under the statutes of this state an order of a committing magistrate admitting to bail a person accused of a capital offense is an adjudicated matter and, hence, beyond the power of the court to which he is held to answer or any other court to change. The proposition was so novel and out of harmony with the view generally accepted as true in this jurisdiction that it did not impress me as meriting serious consideration when first suggested by counsel for petitioner, but an investigation of the various provisions of the Code bearing on it has led to the conclusion that it is sound.

The power to determine the right of a person accused of a capital offense to be admitted to bail pending his hearing or trial is given to a committing magistrate who under the statutes may be any one of these four officers: A judge of the Supreme Court, a judge of the superior court, a justice of the peace, or a police officer, and when he decides the question the finality or conclusiveness of his order depends wholly upon its character. If he denies bail the statutes specifically provide that the matter may be inquired into upon the petition of the accused through the writ of *habeas corpus,* but if he admits to bail it is as silent as the tomb as to any further consideration of it prior to conviction. It does, it is true, point out the different circumstances under which the court to which the accused is held may commit him to custody but they deal with his failure to live up to or comply with the order admitting him to bail; such, for instance, as the failure to give increased bail, the forfeiture of bail, the insufficiency thereof due to the death or removal from the state of a

surety, etc., and in none of them is express authority to set aside the order itself conferred, nor in any of them, singly or considered together, is it implied. The mere fact that the statute authorizes the court to commit to custody in the situations mentioned, all of which are based upon the theory that the order itself still stands, shows conclusively, and especially so in the light of the omission to make definite provision for setting it aside, that it was the legislative intent that it should remain an adjudicated matter until a conviction should be had.

The right to be admitted to bail pending trial, where it has been determined by the proper officer that the offense is bailable, is a substantial right created by statute and one accused of such an offense can be deprived of it only in the manner provided by the power that gave it life, and the statute having failed to provide that it may be done at all before conviction and there being no rule of construction that would justify a court in reading it into the law it follows that the power to set aside such an order has not been conferred upon anyone. The contention, that the fact that the statute authorizes the superior court to commit to custody for failure to give increased bail implies the power to commit on a charge not bailable, even after the officer charged with the duty of determining this fact has held that it is, is not, it occurs to me, sound. Such, however, seems to have been the view that led the court in *Ex parte Cook*, 35 Cal. 107, a case relied on by the state as authority here, to hold that the court had such power. Just how the fact that the law gives it the right to commit for failure to give increased bail can in any way be construed as conferring upon it the power to set aside an order made by the proper officer that an offense is bailable does not appear. There is no connection between the two orders; hence, it is doubt-

ful that the conclusion reached was justified, and this to some extent affects the value of the opinion as an authority. Even though it construed provisions of the Code of Criminal Procedure similar to those of Arizona and the latter in fact were lifted from them, it was rendered in 1868, several years after this state enacted them substantially in their present form as a part of the Howell Code. Besides, as pointed out by Justice ROSS, the court itself said in its opinion that the meaning of the various provisions of their Code was not clear, and the question whether the order admitting to bail was *res adjudicata* was not before it.

Whether it is wise or unwise, good or bad policy to provide that the order of the committing magistrate admitting to bail one charged with a capital offense is *res adjudicata,* it is not for this court to say. It is sufficient that such is the effect of the statute, and, its being plain that it is, there is no occasion for the judicial branch of the government to concern itself with the wisdom or policy of the provision. These may be adverted to judicially only when they aid in solving something not clear. If the provisions of the statute in question bearing this meaning do not meet with the approval of the legislative department of the state it is within its province to change them.

LOCKWOOD, J., Dissenting.—I regret to say that I cannot concur with the majority opinion of the court in this case, as it seems to me to be ill-founded, both on authority and principle. That opinion, stated in a few words, is that the action of a committing magistrate, denying or granting bail on a murder charge, is *res adjudicata* when in favor of the defendant, but not when it is against him. I discuss first the authorities.

It is a well-known fact that our Penal Code was in most part taken from that of the state of California, and the decisions of that state on such provisions of its Code as are similar to ours are extremely persuasive, if not binding on us. In the case of *Ex parte Cook*, 35 Cal. 107, decided in April, 1868, the facts were very similar to those of the case at bar. The petitioner in that case surrendered himself to the custody of the sheriff to answer to a charge of murder. Thereupon the sheriff took him before a justice of the peace, where he waived preliminary examination, and was committed, but was admitted to bail thereafter by the county judge in the sum of $8,000, which he gave, and was discharged from custody. At the next term of the county court an indictment was presented against him for murder, and thereupon on motion of the district attorney a bench warrant was issued for his arrest under which the sheriff arrested him and held him in custody without bail, and the matter was brought before the Supreme Court of California on an original writ issued in a *habeas corpus* proceeding. The petitioner claimed a discharge on two grounds: (1) Because the county court exceeded its jurisdiction; and (2) because the court issued the bench warrant in a case not allowed by law.

It will be seen that the circumstances in that case are almost identical with those in the case at bar. Petitioner herein was arrested on a charge of murder, taken before a justice of the peace for preliminary examination, and committed for trial. She was admitted to bail, which she gave, and was discharged from custody. Thereafter an information was filed against her charging her with murder, and on motion of the county attorney a bench warrant was issued for her arrest, and, after hearing she was, and is now,

held in custody without bail. The Supreme Court of California held as follows, in the case cited:

"The statute is not, perhaps, as clear upon this question as it might be made, but enough is said to show that it is not intended to fetter the County Court in the exercise of its jurisdiction over the person of the defendant, *after an indictment has been found against him, by reason of any proceedings previously had in the premises.* On the contrary, if bail has been taken, it has been taken to secure his appearance at the County Court, and to hold him amenable to its orders and process (Sec. 516), the same as if he were in actual custody. If that Court is of the opinion that the bail already given is sufficient security, it may allow it to stand unchanged, but if not, it has the power to order him to give additional bail or go into custody; and if, in its judgment, it is a case in which bail ought not to be taken, the Court may order him into custody notwithstanding any bail which may have been given before the indictment was found. *It would be anomalous to hold that the Court can, as it undoubtedly may, compel the defendant to come into Court by its warrant for the purpose of giving additional bail or going into custody on a bailable offense, and yet cannot compel him to come into Court and go into custody on a charge which may not be bailable at all.*" (Italics ours.)

The opinion is explicit as to what is decided, and, if the statutes on which it is avowedly based are similar to ours, is squarely in point.

The majority of this court in its opinion states that, while our general statutes regarding bail are now similar to those of California, those in force in that state in 1868, when the Cook case was decided, were in vital respects different. I am of the opinion to the contrary, after careful examination and comparison of the California statutes, from the Criminal Practice Act of 1851 to the present time, with our Penal Code from 1864 up to and including the Code

of 1928, that our statutes on the subject of bail were originally taken from those of California; that they have never changed in substance, and that even in language they have followed the California law almost *verbatim* until the Revised Code of Arizona of 1928; that the changes in language made then cannot on any reasonable theory be held to have changed the meaning, and that all of the provisions of the California Code on which the Supreme Court of that state expressly based its opinion in the Cook case are found in substance in our present law.

The Cook case cites sections 234, 261–270, and 516 of the Criminal Practice Act as the ones upon which its decision is based. These sections are found in the California statutes of 1851 (pages 237, 240). Sections 234 and 261 of that act read as follows:

"Sec. 234. When an indictment has been found against a defendant not in custody, the same proceedings shall be had as are prescribed in section two hundred and sixty-eight, both inclusive, against a defendant who fails to appear for arraignment."

"Sec. 261. If the defendant has been discharged on bail, or has deposited money instead thereof, and do not appear to be arraigned, when his personal attendance is necessary, the Court in addition to the forfeiture of the recognizance, or of the money deposited, may direct the Clerk to issue a search warrant for his arrest."

Sections 210 and 237 of the Howell Code of Arizona (1864) follow almost *verbatim* sections 234 and 261, *supra*, except in so far as it was necessary to substitute on account of the difference between the Territory of Arizona and the state of California. Sections 932 and 960, Penal Code of Arizona of 1913, are in almost identical language. Section 4995, Revised Code of Arizona of 1928, reads as follows:

"Section 4995. Defendant on bail; bench warrant. If the defendant has been discharged on bail, and do

not appear to be arraigned when his personal attendance is necessary, the court, in addition to the forfeiture of the recognizance or of the money deposited, may direct the clerk to issue a bench warrant for his arrest. When an indictment or information has been filed against a defendant not in custody and who has not been held to answer, the court shall order a bench warrant to issue for his arrest.''

Sections 262–268, inclusive, of the California Practice Act, *supra*, need not be quoted, as they refer to details having no bearing on this case, but it is sufficient to say that they appear in almost precisely the same forms in the Howell Code, the Penal Code of 1913, and the Revised Code of Arizona of 1928.

Sections 269 and 270 of the Practice Act, *supra*, read as follows:

''Sec. 269. When the indictment is for a felony, and the defendant before the finding thereof has given bail for his appearance to answer the charge, the Court to which the indictment is presented, may order the defendant to be committed to actual custody, unless he give bail in an increased amount, to be specified in the order.''

''Sec. 270. If such order be made and the defendant be present, he shall be forthwith committed accordingly. If he be not present, a bench warrant shall be issued and proceeded upon in the manner provided for in this chapter.''

They appear in almost the identical language as sections 245 and 246 of the Howell Code, and as sections 966 and 967 of the Penal Code of 1913. Section 5000, Revised Statutes of Arizona of 1928, reads as follows:

''Section 5000. Increasing amount of bail. When the indictment or information is for felony, and the defendant, before the finding thereof, has given bail for his appearance to answer the charge, the court to which the indictment or information is presented, or in which it is pending, may order the defendant to be committed to custody, unless he give bail in an

increased amount, to be specified in the order. If the defendant is present when the order is made he must be forthwith committed. If he is not present, a bench warrant must be issued for his arrest.''

Section 516 of the Practice Act reads as follows:

''Sec. 516. Bail is put in by a written recognizance executed by two sufficient sureties (with or without the defendant, in the discretion of the Court or Magistrate), and acknowledged before the Court or Magistrate in substantially the following form: 'An order having been made on the —— day of ——, A. D. 18—, by A. B., a Justice of the Peace of —— County (or as the case may be), that C. D. held to answer upon a charge of (stating briefly the nature of the offense), upon which he has been duly admitted to bail in the sum of —— dollars; We, E. F. and G. H. (stating their place of residence), hereby undertake that the above named C. D. shall appear and answer the charge above mentioned in whatever Court it may be prosecuted, and shall at all times hold himself amenable to the orders and process of the Court, and if convicted shall appear for judgment and render himself in execution thereof, or if he fail to perform either of these conditions that he will pay to the people of the State of California, the sum of —— dollars (inserting the sum in which the defendant is admitted to bail).' ''

It also appears almost *verbatim* as section 492 of the Arizona Howell Code, and as 1195 of the Penal Code of 1913. Section 5161, Revised Code of Arizona of 1928, reads as follows:

''Section 5161. Form of bail bond. Bail for the appearance of the defendant before the magistrate upon the examination of the charge, or on the trial of a charge of misdemeanor, shall be put in by a written undertaking, executed by the defendant and not less than two sureties, and acknowledged before the magistrate in substantially the following form:
'' 'An order having been made on the —— day of ——, 19—, by A. B., a justice of the peace of —— county, (or other officer, as the case may be), that the (trial or examination), of one C. D. upon a charge

of (stating briefly the nature of the offense or designating it as a felony or misdemeanor), be held before said justice of the peace on the —— day of ——, 19—, at — o'clock — m., and admitting the said C. D. to bail for his appearance at such (examination or trial), in the sum of —— dollars; we, C. D. as principal, and E. F. and G. H., (stating their places of residence), as sureties, hereby undertake that the said C. D. will appear before said justice of the peace for (examination or trial), at the time above specified, and will at all times hold himself amenable to the orders and process of the court; or, if he fails to perform either of these conditions, that he will pay to the state of Arizona the sum of —— dollars (inserting the amount of bail).'

"Bail for the appearance of the defendant before the superior court after being held to answer, shall be likewise executed and acknowledged, and in substantially the following form:

" 'An order having been made on the —— day of ——, 19—, by A. B., a justice of the peace of —— county, that C. D. be held for answer upon the charge of (stating briefly the nature of the offense) upon which he has been admitted to bail in the sum of —— dollars; we C. D. as principal and E. F. and G. H. (stating their places of residence), as sureties, hereby undertake that C. D. will appear and answer the charge before mentioned, in whatever court it may be prosecuted, and will at all times hold himself amenable to the orders and processes of the court, and, if convicted, will appear for judgment and will render himself to an execution thereof, or, if he fails to perform either of these conditions, that we will pay to the State of Arizona the sum of —— dollars (inserting the amount of bail).' "

In addition to the sections of the Practice Act quoted in the Cook case, sections 510 and 539 of that act should be considered. They read as follows:

"Sec. 510. No person shall be admitted to bail where he is charged with an offense punishable with death, when the proof is evident or the presumption great."

"Sec. 539. The Court to which the committing magistrate shall return the depositions and statement, or in which an indictment or an appeal is pending, or to which a judgment on appeal is remitted to be carried into effect, may, by an order to be entered on its minutes, direct the arrest of the defendant and his commitment to the officer to whose custody he was committed at the time of giving bail, and his detention until legally discharged in the following cases:

"1st. When by reason of his failure to appear he has incurred a forfeiture of his bail or of money deposited instead thereof, as provided in section five hundred and thirty-fifth;

"2d. When it satisfactorily appears to the Court that his bail or either of them are dead or insufficient, or have removed from the State;

"3d. Upon an indictment being found in the cases provided in section two hundred and sixty-ninth."

Section 510 appears in the Howell Code as section 479, and in the Penal Code of 1913 as section 1188, which last is in identical language with section 5158, Revised Statutes of Arizona, 1928, reading as follows:

"Section 5158. *Right to Give Bail.* A defendant charged with an offense punishable by death, cannot be admitted to bail, where the proof of the guilt is evident or the presumption thereof is great. The finding of an indictment or the filing of an information does not add to the strength of the proof or the presumption to be drawn therefrom. . . . "

Section 539 of the Practice Act, *supra,* appears as section 508 of the Howell Code, and section 1217 of the Penal Code of 1913.

Section 5172, Revised Statutes of Arizona of 1928, reads as follows:

"Section 5172. Re-arrest and commitment after bail, grounds. The court to which the committing magistrate returns the complaint, or in which the indictment or information or appeal is pending, or in which a judgment on appeal is remitted to be carried into effect, may, by an order entered upon its minutes direct the arrest of the defendant and his commitment

to the officer to whose custody he was committed at the time of giving bail, and his detention until legally discharged, in the following cases: When, by reason of his failure to appear, he has incurred a forfeiture of his bail, or of money deposited instead thereof; when it satisfactorily appears to the court that his sureties, or either of them, are dead or insufficient, or have removed from the state; upon an indictment or information being found for felony, and the defendant is on insufficient bail, in which case the order shall specify the increased amount.''

In comparing this last section, however, one should read both sections 269 and 539 of the California Practice Act.

The act of 1925 of the Arizona legislature (Laws 1925, chap. 35) providing for the revision of the Arizona statutes instructed the Code Commissioner that he should not ''undertake to make any change of existing laws, but shall harmonize where necessary, reduce in language, and remove inconsistencies where the same are found to exist.'' (Section 3.) We have held in the case of *In re Sullivan's Estate, ante,* p. 387, 300 Pac. 193, just decided, that we should presume, when the language of the Code of 1928 differs from that of the one of 1913, the meaning remains the same, unless the change is so great that it shows beyond doubt the legislature intended a change in the substance of the law also. On reading the parallel sections above quoted and cited, and, in view of the act of 1925 and the decision above cited, I am at a loss to see how it can be held that the decision in the case of *Ex parte Cook, supra,* is not based upon statutes that are exactly similar in substance to those of ours at the present time. If we follow the usual rule that, when we take a statute, we take it with the interpretation given it by the state from which it came, *Ex parte Cook* is binding upon us, and, as was said by the Supreme Court of California in that case, referring to the statute: ''It is not intended to fetter

the . . . Court in the exercise of its jurisdiction over the person of the defendant, after an indictment has been found against him, by reason of any proceedings previously had in the premises, . . . ," and that the court, when bail has been taken to secure the appearance of a defendant to answer before it, "if, in its judgment, it is a case in which bail ought not to be taken, the Court may order him into custody notwithstanding any bail which may have been given before the indictment was found. It would be anomalous to hold that the Court can, as it undoubtedly may, compel the defendant to come into Court by its warrant for the purpose of giving additional bail or going into custody on a bailable offense, and yet cannot compel him to come into Court and go into custody on a charge which may not be bailable at all."

I have examined carefully the authorities cited in the majority opinion and in the brief of petitioner which purport to reach a contrary conclusion. It seems to me that they are not at all in point. The text of 3 Ruling Case Law, paragraph 35, does state as follows:

"An order granting bail is *res judicata* and final as to the state and even as to the accused except as to the amount, which may be reduced upon appeal or otherwise."

There is but one case in Ruling Case Law, however, referred to as supporting this doctrine, which is that of *Ex parte Augustine*, 33 Tex. Cr. 1, 47 Am. St. Rep. 17, 23 S. W. 689. The facts in that case were as follows:

The defendant was indicted for murder, and on account of illness was admitted to bail in the sum of $10,000. For some reason the case was dismissed, and later a new indictment was filed for the same offense. The Court of Criminal Appeals of Texas stated:

"We deem it necessary to discuss only one of the legal questions presented for decision, to wit, when a person charged with a capital offense has once been admitted to bail *after indictment found,* he shall not be subject to be again placed in custody for the same offense, except on surrrender by his sureties, whether the bail be granted on the facts, or on account of ill health. In other words, when bail is once granted after indictment found, it is beyond the power of the state to rearrest for that offense; the right to bail being *res adjudicata. . . .* The state is not entitled to a new trial, and is debarred the right of appeal by the constitution of this state; and there is no way by which the state can vacate a judgment, and retry the accused, of its own right. A judgment granting bail is final, as to the state, and even to the accused, unless he should seek to reduce the amount of bail granted, by appeal or otherwise." (Italics ours.)

In the first place, it will be noted that the point decided is not that an order of the committing magistrate *before* indictment or information allowing bail is *res judicata after* an information has been filed, but that, when bail has been allowed *after* information by the trial court, it may not set aside its own orders. Further, the decision stands on a mere *ipse dixit,* and is not supported by the authorities cited therein. In the case there are cited the one case of *Ex parte Jilz,* 64 Mo. 205, 27 Am. Rep. 218, certain texts, and a Texas statute. On examining the case of *Ex parte Jilz,* however, it appears the question involved was merely whether, after a defendant has been released on a writ of *habeas corpus,* he can again be arrested, and held without bail on the same state of facts, and it appears that in Missouri the state may not appeal from a judgment in favor of the defendant in *habeas corpus.* The case is not authority for the rule laid down in *Ex parte Augustine.* Nor does the Texas statute cited justify the conclusion reached by the court, for on its face it only

applies when bail has been granted *after a hearing on habeas corpus.*

The Supreme Court of Oklahoma, in the case of *State* v. *Newman,* 114 Okl. 228, 245 Pac. 999, held in a case where a defendant had been admitted to bail by the district court having jurisdiction of the matter, and it was afterwards sought to revoke the order:

"We therefore reach the conclusion that, when the district court, having jurisdiction, and having the matter properly before it, entered its solemn judgment and order adjudicating and finding that the defendant was entitled to bail, that judgment and finding is binding and conclusive, and is *res adjudicata* on that question."

In support of this rule the cases cited are *Ex parte Augustine* and *Ex parte Jilz, supra,* which, as I have indicated, are not in point on a state of facts like that before us in this case.

No other cases bearing on the question have been cited by counsel, nor can I find any. The only authority on a state of facts similar to that of the case at bar is from the state whose statutes are the ones from which those of Arizona are undoubtedly taken, and it is emphatic to the effect that *after* an indictment or information has been found, the trial court is not bound by an order made previous thereto allowing bail, but may review the question and take such action as it deems proper, subject, of course, to the right of review on *habeas corpus* in this court.

While it does not discuss the Kentucky statutes affecting bail, the language of the Supreme Court of Kentucky, in considering a somewhat similar question in the case of *Adkins* v. *Commonwealth,* 98 Ky. 539, 32 L. R. A. 108, 33 S. W. 948, is of interest on this point. The portion applicable to the present case reads as follows:

"Another matter complained of is that the court, on entering upon the trial, disregarded the order of the county judge of Knox county, previously made, allowing bail; held the bond taken bad on its face, as not being taken by the proper officer; and then ordered the defendants into actual custody. There was no error in all this. *It would be a strange perversion of the law if a county judge could dictate to a circuit judge what course he should pursue in the trial of one charged with felony in his court.* It was within the discretion of the court to order defendants into actual custody when the trial commenced. Neither should the order of the county judge heretofore made have any effect, or be regarded of any validity, if the prisoners desire to again give bail." (Italics ours.)

If we substitute "justice of the peace" for "county judge," and "judge of the Superior Court" for "district court," the pertinence of the quotation will be apparent.

But, laying aside all questions of the mere weight of authority, it seems to me the rule laid down by the majority is not in consonance with logic or justice, and represents a view not in accord with the more modern attitude towards criminal law. As we said in the case of *Lawrence* v. *State*, 29 Ariz. 247, 240 Pac. 863:

"One of the chief causes for the alarming increase of crime and the lessened esteem in which the administration of criminal justice is notoriously held by the layman undoubtedly is the tendency of the courts to adhere to archaic rules of procedure, when the reasons which caused their adoption have long since vanished. In ancient times a man accused of crime had no right to counsel; could not even testify in his own behalf; had no means of compelling the attendance of witnesses; was not entitled to bail as of right; and the cards were in many ways heavily stacked against him. It was in order to lessen, partially at least, these heavy odds that the courts adopted the rule that any error against a defendant in a criminal

case was presumed to be prejudicial. But of late years the situation has changed. Every disability of the defendant has been removed, and he is now brought to trial, not only with every right enjoyed by the state, but with many privileges denied the latter. As an illustration of this we cite a few instances: The defendant must be advised in advance of trial of the exact nature of the charge against him. The state can only guess at his line of defense. He may ask for a change of place of trial, and disqualify the trial judge. The state cannot. He always has more challenges to the jury than the state. He may take the depositions of absent witnesses on his behalf. The state may not take them against him. He need not testify unless he wishes, and the state cannot comment on the fact. If a state's witness fails to take the stand, the defendant may comment as he desires. The state must prove his guilt beyond all reasonable doubt. He may admit doing the act charged, and, if he sets up any special defense, such as insanity, self-defense, lack of criminal intent, etc., he need not prove it by even a preponderance of evidence. The mere raising of a reasonable doubt as to whether or not the defense is true acquits him. And above all, if he is finally convicted he may appeal at the expense of the state, and show in the appellate court any mistake committed in the trial below, while, if he be acquitted, no matter if as a result of the grossest error by the court, perjury by the witnesses, or bribery of the jury he may with impunity boast of his crime. He is free for all time, for the state may not by an appeal show the unjust acquittal and again place him on trial.''

The rule stated by the majority of the court in substance is that an order of a committing magistrate, granting or refusing bail in a capital case, is *res judicata* when it is against the state, but is subject to review when it is not in its favor. It may be that it is in the power of the legislature so heavily to weight the scales of justice against society and in favor of a defendant accused, and on strong evidence, of the gravest crime known to our law, but, in the

absence of a definite and express provision in the statutes to that effect, I cannot bring myself to hold what this decision in effect means: That, when one is accused of murder in the first degree, under the most atrocious circumstances, and where the evidence is overwhelming against him, if he can in some way deceive, influence, or persuade a lax, sympathetic, or ignorant committing magistrate into admitting him to bail, he may thus evade the express provisions of the Constitution and statutes in regard to bail in cases of that kind, and that the superior court, which has full jurisdiction in all other respects to try the proceedings, is helpless to correct a manifest and palpable miscarriage of justice and defiance of the law.

It is not necessary for me to express any opinion as to whether the evidence in this particular case shows that, in the language of the statute, "the proof of guilt is evident, or the presumption thereof great," nor does it perhaps matter greatly as to whether this particular defendant be admitted to bail or not. She and her fate, whatever it may be, will soon be but a memory of the past. But the consequences of the legal principles laid down in the majority opinion may persist long after all concerned herein are but dust. It is because I feel those principles represent a step backward on the long and hard road by which society is struggling toward a better order of things that I voice my protest.