793 P.2d 99

**Herbert E. DAVIS, Petitioner,**

v.

**The Honorable Richard A. WINKLER, a Judge for the Superior Court of the State of Arizona, County of Cochise, Respondent,**

and

**The STATE of Arizona, Real Party in Interest.**

**No. 2 CA–SA 89–0164.**

Court of Appeals of Arizona, Division 2, Department A.

Jan. 9, 1990.

Review Denied June 26, 1990.*

* Corcoran, J., of the Supreme Court, was not present and did not participate in the determination of this case.

Law Offices of Thomas E. Higgins, Jr. by Thomas E. Higgins, Jr., Tucson, for petitioner.

Alan K. Polley, Cochise Co. Atty. by Chris M. Roll, Bisbee, for real party in interest.

## OPINION

HATHAWAY, Judge.

Petitioner Herbert E. Davis (Davis) seeks special action relief from the respondent judge's denial of his motion to reconsider the granting of the petition to reconsider conditions of release filed by real party in interest, State of Arizona, and the order that Davis be held without bail, pending trial. For the reasons stated below, we accept jurisdiction but deny relief.

### FACTS AND PROCEDURAL BACKGROUND

On November 23, 1988, Davis was indicted by the Cochise County Grand Jury for an incident occurring in October in which he allegedly beat and sexually assaulted a woman with whom he had been living for a number of years and attempted to set fire to her house. The two apparently separated after the incident. The charges were dismissed without prejudice pursuant to a stipulation dated March 3, 1989.

On June 9, 1989, there was another incident involving Davis and the same victim. The state contends that Davis telephoned the victim and after she stated she did not wish to see him, he went to her home, cut the telephone line, and entered the home armed with a .38-caliber revolver. Although Davis and the state dispute what occurred that evening, it is clear that the victim and Davis had an altercation which resulted in the exchange of gunfire. Davis was arrested on charges of first-degree burglary, aggravated assault and attempted murder, and at his initial appearance on July 1, 1989, bond was set at $50,000. On July 7, 1989, Davis was indicted by the

Cochise County Grand Jury for the June 1989 incident and an information was filed which revived the charges relating to the October 1988 incident. The state moved to consolidate the two cases. The trial court granted the motion on August 1, 1989, ordering that bond be set in the amount of $50,000 for both cases.

On September 8, 1989, the state filed a petition to reconsider conditions of release in which it requested that Davis be held without bond pending trial, contending that Davis posed a substantial danger to the victim and that no conditions of release could be imposed which would reasonably assure her safety. The state explained that it had recently become aware of and had received copies of offense reports relating to an incident in January 1979, during which Davis entered the home of his estranged wife at approximately 2:00 a.m., assaulted her and their four daughters while armed with a revolver, forced her to beg for her life and threatened to kill them all. He reportedly fired one shot which missed his wife and took her from the residence at gunpoint. He surrendered the gun to her and when he asked her to shoot him and she refused, he took an overdose of tranquilizers.

Davis was in custody when the state filed its petition, having been unable to post bond in the amount previously set. An expedited hearing was held on September 11, 1989, at which time the state submitted transcripts of the victim's statements concerning both the 1988 and 1989 incidents, police reports concerning the 1989 incident, and copies of witness statements and police reports concerning the January 1979 incident. During the hearing, Davis's attorney requested time to file responsive pleadings and leave was granted, although both sides presented legal arguments. The respondent judge took the matter under advisement. The following day Davis posted bond and left for California. It appears from the record before us that the state's petition was granted by the court after September 11, 1989, before any responsive pleadings were filed. Although the minute entry was dated September 11, it appears to have been filed on September

18, 1989. On September 28, 1989, Davis filed a motion to reconsider the order holding him without bond on the grounds that the state's petition was untimely and that the state failed to carry its burden of establishing by clear and convincing evidence that no conditions of release could be imposed which would reasonably protect public safety. Additionally, he complained that he had not been given the opportunity to file a response to the state's petition. It appears that Davis returned to Arizona that day, surrendered himself to authorities and was immediately taken into custody. Davis's motion was heard on October 13, 1989, and denied on October 18. This special action followed, accompanied by Davis's request that this court order his release pending trial.

## ISSUES

The general question raised by this special action is whether the time constraints of A.R.S. § 13-3961(C) apply where the state seeks to have a defendant held without bond, modifying previously imposed release conditions, based on information obtained after the release conditions were initially imposed. Specifically, in the case before us, did the respondent judge abuse his discretion in granting the state's petition to reconsider release conditions and denying Davis's motion for reconsideration of that order on the grounds that (a) the state's petition was untimely; (b) the issue regarding Davis's release was *res judicata;* (c) the state should have been equitably estopped from seeking the change; and (d) the state failed to sustain its burden of establishing that Davis was not bailable?

## JURISDICTION

 The state contends that this court has no jurisdiction to hear this matter for the reason that Davis's claims should have been brought in the form of a writ of *habeas corpus* pursuant to A.R.S. §§ 13-4121, *et seq.* and, therefore, should have been submitted to the trial court, because the court of appeals does not have original jurisdiction of such proceedings. *See*

A.R.S. §§ 13–4123, 12–120.21. We disagree.

The writ of *habeas corpus* has largely been replaced by the special action proceeding and Ariz.R.Crim.P. 32, 17 A.R.S. It has been traditionally used for collateral attacks on judgments of conviction and sentences in addition to providing expedited relief for illegal detention. We do not believe that because Davis may have been able to raise this issue in a *habeas corpus* proceeding he is precluded from raising it by way of special action. Clearly, the objective is to obtain expedited appellate review which the special action proceeding affords.

Because the issue raised here is not susceptible to review on appeal, *Nataros v. Superior Court of Maricopa County*, 113 Ariz. 498, 557 P.2d 1055 (1976), and because of the statewide importance of the application of A.R.S. § 13–3961 to similar factual circumstances, we accept jurisdiction. *See* Ariz. R.P. Spec. Action 1, 17B A.R.S.; *University of Arizona Health Sciences Center v. Superior Court*, 136 Ariz. 579, 667 P.2d 1294 (1983).

### APPLICATION OF A.R.S. § 13–3961

■ A.R.S. § 13–3961 provides, in pertinent part, as follows:

B. A person in custody shall not be admitted to bail if the person is charged with a felony offense and the state certifies by motion and the court finds after a hearing on the matter that there is clear and convincing evidence that the person charged poses a substantial danger to another person or the community, that no condition or combination of conditions of release may be imposed which will reasonably assure the safety of the other person or the community and that the proof is evident or the presumption great that the person committed the offense for which he is charged.

C. Upon oral motion of the state the court shall order the hearing required by subsection B at or within twenty-four hours of the initial appearance unless the person subject to detention or the state moves for a continuance.

On November 2, 1982, effective November 30, 1982, the Arizona Constitution was amended and the following paragraph, which parallels and ratifies § 13–3961(B), was added to Article 2, § 22:

All persons charged with crime shall be bailable by sufficient sureties, except for:

\*　　\*　　\*　　\*　　\*　　\*

3. Felony offenses if the person charged poses a substantial danger to any other person or the community, if no conditions of release which may be imposed will reasonably assure the safety of the other person or the community and if the proof is evident or the presumption is great as to the present charge.

Davis contends that the respondent judge abused his discretion in granting the state's petition on the ground that it was not made at or within 24 hours of his initial appearance and was therefore untimely. In support of his argument that strict adherence to the time contraints of § 13–3961(C) is required, Davis cites federal cases concerning the application of the Bail Reform Act of 1984 (the Act), 18 U.S.C. § 3142. *See United States v. Al-Azzawy*, 768 F.2d 1141 (9th Cir.1985); *United States v. O'Shaughnessy*, 764 F.2d 1035 (5th Cir.1985); *United States v. Payden*, 759 F.2d 202 (2d Cir.1985). The Act is similar to § 13–3961 in material respects, providing, in pertinent part, that the hearing to hold a defendant without bail "shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance." 18 U.S.C. § 3142(f).

The cases cited by Davis do indeed demand strict adherence to the requirements of the Act. In fact, in *United States v. O'Shaughnessy, supra,* the Fifth Circuit went so far as to say that even where the government obtains information subsequent to the initial imposition of release conditions and the request for a hearing to detain indefinitely was not made at the initial appearance, the accused's release may not be revoked, notwithstanding the

fact that the government's information establishes that the accused should be detained pending trial. As our supreme court noted in *Pool v. Superior Court,* 139 Ariz. 98, 108, 677 P.2d 261, 271 (1984), however, "the concept of federalism assumes the power, and duty, of independence in interpreting our own organic law. With all deference, therefore, we cannot and should not follow federal precedent blindly." *See also State v. Mauro,* 159 Ariz. 186, 190, 766 P.2d 59, 63 (1988); *Deer Valley Unified School District v. Superior Court of the State of Arizona,* 157 Ariz 537, 541, 760 P.2d 537, 541 (1988); Feldman & Abney, *The Double Security of Federalism,* 20 Ariz. St. L.J. 115 (1988). Because of the anomalous results it would engender, we choose not to follow federal precedent here.

■ We find nothing in A.R.S. § 13–3961 to suggest that where additional information regarding an accused is obtained by the state subsequent to the initial appearance and following the initial imposition of release conditions which establishes that the accused is not bailable under § 13–3961 and Article 2, § 22 of the Arizona Constitution, the state is prohibited from seeking a reconsideration of the release conditions simply because it did not request a hearing to determine whether the accuséd is bailable at or within 24 hours of the accused's initial appearance. There is a duality of public policy behind § 13–3961. The first is to ensure that when the state seeks to have an accused held without bond, the accused must not be detained for an unreasonable amount of time pending the determination of whether the accused is bailable. The statute provides an expedited manner for determining the issue at the very outset of the criminal proceeding, creating a carefully limited exception to the rule that release conditions be imposed at the initial appearance. Ariz.R.Crim.P. 7.4(a), 17 A.R.S. Thus, where the accused's release is being considered for the very first time and the state believes at that time, based upon information then before it, that the accused should be held without bond, the *hearing on the matter must be held at or within 24 hours of the initial appearance unless a continuance is granted based upon* good cause. To further expedite the determination, the legislature provided that the state's request for the hearing may be made orally.

The second public policy that § 13–3961 and the parallel provision of the constitution of this state were designed to serve is the protection of the public generally and, when necessary, a specific individual or individuals from a clearly dangerous defendant. We believe that the result reached by the respondent judge serves the latter policy and does not contravene the former. Davis was being held from the time of his arrest through September 12, 1989, not because he was awaiting the court's determination of whether he was bailable but because he had not posted bond in the amount of $50,000. Were we to adopt Davis's interpretation of § 13–3961, however, the purpose of protecting the victim and the public would clearly be thwarted. As discussed below, the evidence in this case sufficiently established that the victim's safety could not be reasonably assured.

■ It strains logic to hold, as Davis urges us to do, that where the state obtains information clearly indicating that a defendant is a danger to an individual or society, the state and the court are powerless to change any release conditions previously imposed and are required to allow the accused to remain at large. We do not believe the legislature intended that the provision be used to such an end, nor do we think the language of the statute requires it. The court may review and amend release conditions at any time, and the subsequent discovery of additional information indicating that the accused is not bailable is a sufficient reason to do so. *See* Ariz.R. Crim.P. 7.4(c), 17 A.R.S. The fact that the rules permit an accused to seek reexamination of the conditions of release, Ariz.R. Crim.P. 7.4(b), does not mean that the court is prevented from reviewing those conditions at the request of the state.

### RES JUDICATA

■ Davis also argues that strict adherence to the time limits imposed by

§ 13–3961 is necessary because of the doctrine of *res judicata*, relying upon *In re Marshall*, 38 Ariz. 424, 300 P. 1011 (1931). Aside from the fact that *Marshall* was decided years before ·the enactment of § 13–3961 and the amendment to the constitution which added grounds for holding without bail that did not previously exist, it is entirely distinguishable. In *Marshall*, a superior court judge reviewed the transcript of a preliminary hearing which was the basis of the justice court magistrate's initial determination that the defendant was bailable. Because the evidence was exactly the same, the supreme court found that the superior court was bound by that determination and could not subsequently order the defendant held without bail.

In the case before us, the state did not obtain the additional information until August 29, 1989. It appears from the record that the state filed the petition as soon as it had what it believed was sufficient evidence establishing that Davis was not bailable which, unlike in *Marshall*, was submitted to the same judge who originally set bail. Davis claims that the state should have known about the 1979 incident, as he had been "under investigation" since 1988, suggesting that it was not, in fact, new information. There is no support in the record for this contention. Additionally, there is nothing in the record indicating that the state acted in any way in bad faith. The judge who initially ordered Davis's release conditions was simply given the opportunity to reconsider his order based upon information not previously before him. Under the circumstances, we find *Marshall* to be inapplicable. Moreover, the issue of whether Davis was bailable was not fully litigated, given the fact that new information was presented. Therefore, the prior order was not *res judicata.*

### EQUITABLE ESTOPPEL ·

■ Davis contends that the state should be equitably estopped from seeking reconsideration of the release conditions two and one-half months after the initial conditions were imposed. Citing the elements of equitable estoppel set forth in *United States*

*v. Georgia–Pacific Co.*, 421 F.2d 92 (9th Cir.1970), Davis contends that the state knew the facts, that Davis had a right to believe after his bail hearing that he would be released if bond were posted, that Davis was ignorant of the fact that he could be ordered back to jail after being released, and that he relied on the facts to his detriment by moving to California and commencing work there with his brother. We find this claim to be entirely meritless.

There is nothing in the record adequately contradicting the state's claim that it did not obtain the new information until the end of August and that it filed its petition as soon thereafter as possible. As we have already stated, Davis clearly was not prejudiced by the filing prior to his release because he would have been in custody anyway, having failed to post bond. Nor does the record support his claim that he detrimentally relied on the court's initial release order and had no idea he could be reincarcerated. Davis's release status was vigorously litigated. Even if, as we assume to be the case, he did not know the court had granted the state's petition before he posted bond and was released, his departure occurred the day after the respondent judge took the matter under advisement. Davis can hardly claim that he had no idea he could be imprisoned again.

We find no basis for applying the doctrine of equitable estoppel against the state where it appears that the state was acting in good faith and in the face of a strong public policy to protect the public and victims from a dangerous defendant.

### THE EVIDENCE

■ Davis contends that the previously imposed release conditions were adequate to protect the public and the victim and that the state failed to demonstrate with competent evidence that no conditions of his release could protect the public. We disagree.

Davis first argues that the respondent judge abused his discretion in considering an 11–year–old police report regarding the 1979 incident. We agree with the state that Davis's reliance upon Rule 609 of the

Federal Rules of Evidence is misplaced. That rule simply provides that a conviction for a crime older than 10 years cannot be used in a judicial proceeding for purposes of impeachment. The sole purpose of the proceeding below was to determine whether Davis was bailable, and the information was used to that end, not as a means of impeaching Davis. Although § 13–3961 is silent on this issue, we believe that the hearing was a "release determination" and, accordingly, the evidence presented need not be admissible under the rules of evidence. Ariz.R.Crim.P. 7.4(d), 17 A.R.S. The evidence presented by the state was competent and sufficiently reliable.

Based upon our review of the evidence presented to the respondent judge, it appears that Davis has engaged in a series of violent acts against two women who have ended or been in the process of ending their relationship with him. The victim of the instant offenses was allegedly attacked by him at least twice, although the record reveals prior acts of violence against her. Davis appears to be a volatile, vengeful and extremely dangerous individual. Additionally, the proof is evident and the presumption great that he committed the crimes. We conclude therefore that the state demonstrated by clear and convincing evidence that Davis was not bailable under § 13–3961(B).

Finally, we reject Davis's broad-based attack upon the proceedings below as being in violation of his due process rights. He complains that the respondent judge ruled on the state's petition before he was permitted to respond as he was told he would be permitted to do. We find that the trial court afforded Davis more than adequate opportunity to be heard and to present evidence on his behalf. His counsel argued at the September 11, 1989 hearing and the matter was considered again at which time Davis was given the opportunity to present his position in writing and to argue it before the judge. Any error in the trial judge's expedient ruling on the state's petition was harmless.

Davis's request for special action relief is denied.

ROLL, P.J., and HOWARD, J., concur.