949 P.2d 539

**Pablo Cuen SOTO, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable Ronald S. Reinstein, Respondent Judge,**

**The STATE of Arizona, ex rel. Richard ROMLEY, Maricopa County Attorney, Real Party In Interest.**

No. 1 CA–SA 97–0059.

Court of Appeals of Arizona, Division 1, Department A.

July 15, 1997.

Review Denied Jan. 21, 1998.*

* Moeller, J., did not participate in the determina-    tion of this matter.

Grant Woods, Arizona Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Christine M. Powell, Assistant Attorney General and Richard Romley, Maricopa County Attorney by Terry Jennings and Diane E.W. Gunnels, Deputy County Attorneys, Phoenix, for Real Parties in Interest.

Dean W. Trebesch, Maricopa County Public Defender by Helene F. Abrams and Vonda F. Wilkins, Deputy Public Defenders, Phoenix, for Petitioner.

## OPINION

RYAN, Judge.

Fifteen-year-old Pablo Soto ("Soto") is charged with three counts of sexual assault, class 2 felonies. Soto petitioned for special action relief from his automatic transfer to superior court under Proposition 102's amendments to the Arizona Constitution. In an earlier order, we accepted jurisdiction and denied relief. This opinion explains that order.

This is a case of first impression and the issues raised are purely legal ones likely to recur and to affect large numbers of juvenile defendants. We therefore accept jurisdiction. *See JV–111701 v. Superior Ct.,* 163 Ariz. 147, 149, 786 P.2d 998, 1000 (App.1989). Because we find that Proposition 102 is valid and its provisions apply to the crimes charged, we deny relief.

We also consider Soto's petition for relief from the superior court's imposition of $9600 bail. We deny relief because we find meritless Soto's argument that imposition of bail in any amount would be unconstitutional.

## BACKGROUND

### Proposition 102, The Juvenile Crime Initiative

On November 5, 1996, a majority of Arizona voters approved Proposition 102, "The Juvenile Crime Initiative," amending the Arizona Constitution by adding article 4, part 2, section 22. The votes were canvassed and certified on November 25, and Governor Symington signed the measure into law on December 6, 1996. Among other things, the measure divests the juvenile court of jurisdiction over juveniles fifteen years of age or older who are "accused of murder, forcible sexual assault, armed robbery or other violent felony offenses as defined by statute." ARIZ. CONST. art. 4, pt. 2, § 22(1) (eff.Dec. 6, 1996). Such juveniles are instead automati-

cally transferred to superior court to be tried on those charges as adults.

## Charges Against Soto

On December 18, 1996, Soto and a co-defendant were indicted on three counts of sexual assault committed on December 6 in violation of Arizona Revised Statutes Annotated ("A.R.S.") sections 13–1406 and –1401. The pleadings allege that Soto admitted holding the victim down by her shoulders so she could not resist the sexual assault. Thus, the State maintains that Soto committed forcible sexual assault and thereby triggered Proposition 102's mandatory transfer provision.

Soto moved to dismiss the charges on grounds that the constitutional amendments effected by Proposition 102 were invalid and the charge against Soto, "forcible sexual assault," was not a cognizable statutory crime. The trial court denied the motion.

The court set bond at $9600. Soto requested a modification of the release order, then moved for third party release; the court denied both motions. At the hearing, defense counsel suggested that Arizona Department of Economic Security ("ADES"), as Soto's guardian, "look into posting that bond." The ADES representative told the court that no statutory provision allowed ADES to post bond, and therefore none would be posted on Soto's behalf. Consequently, Soto contends that he effectively has been denied bail or assessed excessive bail in violation of the United States and Arizona Constitutions.

## ISSUES

We decide three issues in this special action:

1. whether Proposition 102 properly became law even though the Governor was absent from the state when the votes were canvassed and did not proclaim the measure to be law until thirty-one days after the election;

2. whether "forcible sexual assault" is a cognizable crime triggering the automatic transfer provision of Proposition 102; and

3. whether Soto is being held in violation of the United States and Arizona Constitu-

tions because, as an indigent ward of the state, neither he nor ADES can post any amount of bail to secure his release.

## DISCUSSION

### I. Proposition 102 Properly Became Law

#### A. Canvassing of Votes Was Legally Conducted

To proclaim an initiative proposition as law, Arizona requires

> the secretary of state, in the presence of the governor and the chief justice of the supreme court, to canvass the votes for and against each such measure or proposed amendment to the constitution within thirty days after the election, and upon the completion of the canvass the governor shall forthwith issue a proclamation, giving the whole number of votes cast for and against each measure or proposed amendment, and declaring such measures or amendments as are approved by a majority of those voting thereon to be law.

ARIZ. CONST. art. 4, pt. 1, § 1(13). Minutes from the Constitutional Convention of 1910 are silent as to the rationale for this provision. *See* THE RECORDS OF THE ARIZONA CONSTITUTIONAL CONVENTION OF 1910 (John S. Goff, ed., 1991). Overall, the initiative provisions adopted by the framers of the constitution "were intended to give a populist direction to the Arizona government," that is, to allow the majority of the electorate to pass desired legislation. *See generally* Gordon Morris Bakken, *The Arizona Constitutional Convention of 1910,* 1978 ARIZ. ST. L.J. 1, 13 (1978). This is precisely what happened in November 1996 when the Arizona electorate voted 844,922 to 496,720 to adopt Proposition 102.

■ Soto first challenges Proposition 102 on procedural grounds, claiming that Governor Symington's absence from the state while the votes were canvassed renders the measure invalid. We find no support for assigning such a drastic result to the procedure used here.

When the governor is absent from the state, "the powers and duties of the office of Governor shall devolve upon" the secretary

of state. ARIZ. CONST. art. 5, § 6. On November 25, 1996, therefore, Secretary of State Jane D. Hull assumed the role of Acting Governor during the final canvassing of votes. *See State ex rel. DeConcini v. Garvey*, 67 Ariz. 304, 308–09, 195 P.2d 153, 155–56 (1948) (finding official acts performed by Secretary of State in Governor's absence valid); *McCluskey v. Hunter*, 33 Ariz. 513, 518–19, 266 P. 18, 20 (1928) (acts of Secretary of State in Governor's absence are "just as valid and binding" as though performed by Governor himself). Additionally, there is nothing in the constitution prohibiting the secretary of state from serving in both positions simultaneously in this situation.

Moreover, there is no dispute over the validity of the final count or the fact that voters overwhelmingly approved the measure. The canvassing was completed well within the thirty-day period specified by law. *See* ARIZ. CONST. art. 4, pt. 1, § 1(13).

### B. Proclamation of the Law Was Timely

◼ Soto's second challenge to Proposition 102's validity criticizes the fact that Governor Symington waited eleven days after the votes were canvassed to proclaim the measure to be law. Soto argues that the Governor should have proclaimed the law "immediately" to comply with the constitutional mandate that

> the governor shall *forthwith* issue a proclamation ... declaring such measures or amendments as are approved by a majority of those voting thereon to be the law.

*Id.* (emphasis added). Soto cites *Western Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 814 P.2d 767 (1991), to support his contention that the "delay" renders the measure invalid because the legislative process requires strict compliance with constitutional mandates. We find no merit in Soto's argument.

First, "forthwith" has been defined in Arizona in terms of reasonableness. *See, e.g., State v. Shaw*, 93 Ariz. 40, 49, 53 & n. 2, 378 P.2d 487, 493, 495–96 & n. 2 (1963) ("earliest reasonable opportunity" and "no unreasonable length of time ... before performance"); *State v. McEuen*, 42 Ariz. 385, 397, 26 P.2d 1005, 1009 (1933) ("with as much speed as is reasonably possible under the circumstances"); *see also* Black's Law Dictionary 782 (4th ed. rev.1968) ("[i]mmediately; without delay, directly, hence *within a reasonable time under the circumstances* of the case; promptly and with reasonable dispatch") (emphasis added). An eleven-day period from the time the votes were canvassed in late November to the day the measure was proclaimed law is not unreasonable.

Second, Soto misstates the premise of *Western Devcor.* That case holds that "substantial," not strict, compliance is required "in the initiative context." 168 Ariz. at 428, 814 P.2d at 769; *accord Barry v. Alberty*, 173 Ariz. 387, 389, 843 P.2d 1279, 1281 (App.1992) ("Initiative measures require 'substantial' compliance with requirements of the law, but not necessarily 'technical' compliance.") (citation omitted). An eleven-day period constitutes "substantial compliance" with the command to proclaim the law "forthwith."

Further, as the trial court noted in its minute entry denying Soto's motion to dismiss, even if Soto correctly defined "forthwith" as "immediately," nothing in the constitution or the implementing statutes specifies an appropriate consequence for lack of immediacy. *See* ARIZ. CONST. art. 4, pt. 1, § 2 ("The Legislature shall provide a penalty for any wilful violation of any of the provisions of the preceding section [§ 1].") *Compare, e.g.*, A.R.S. §§ 19–114.01 (designating payment or receipt of payment to sign petition as class 1 misdemeanor), –115 (unlawfully signing another's name to petition is class 1 misdemeanor), –116 (coercing or intimidating someone into signing petition is class 1 misdemeanor), and –128(I) (imposing civil sanctions for violations of funding limitations). The consequence Soto urges—voiding the challenged measure for alleged lack of immediacy—contravenes the intent of the constitution, which reserves to the people the power to enact laws by an initiative process. *See* ARIZ. CONST. art. 4, pt. 1, § 1(1).

Soto's challenges to the validity of Proposition 102 on grounds that votes were unconstitutionally canvassed and the pre-proclamation delay exceeded that allowed by law lack

merit. Proposition 102 and the constitutional amendment it created are valid law.

## II. Forcible Sexual Assault Triggers Proposition 102 Provisions

Proposition 102 dictates that a juvenile who is fifteen years of age or older and accused of forcible sexual assault committed on or after the effective date of the measure must be prosecuted as an adult. On December 6, 1996, the date on which he allegedly committed the sexual assault by using force, *see* A.R.S. §§ 13–1406 and –1401(5)(a), Soto was fifteen years old. He therefore fell under Proposition 102's automatic transfer provision. *Soto contends that the provision is unconstitutionally vague because* " 'forcible sexual assault' is not currently a criminal offense defined by statute." Soto claims that until the legislature specifically defines the offense, Proposition 102 fails to give sufficient notice of the type of conduct which subjects a juvenile to automatic transfer for adult prosecution. Thus, he contends the provision violates the due process clauses of the Fifth and Fourteenth amendments to the United States Constitution.

The State counters that Soto lacks standing to challenge the provision because his conduct falls within the "hard core" of the statute and he therefore had fair notice of the criminality of his conduct. The State also asserts that "forcible sexual assault" is statutorily defined and clearly qualifies as conduct targeted by Proposition 102. We first consider the standing issue.

### A. *Soto's Standing to Challenge Proposition 102*

█ A defendant whose conduct is clearly prohibited by a law may not challenge that law for vagueness. *See Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974); *State v. McCoy,* 187 Ariz. 223, 225, 928 P.2d 647, 649 (App.1996). The only exception to this traditional standing rule applies when the criminalized conduct at issue has a real and substantial deterrent effect on activities protected by the First Amendment to the United States Constitution. *Maricopa County Juv. Action No. JT9065297,* 181 Ariz. 69, 73, 887 P.2d 599, 603

(App.1994); *State v. Steiger,* 162 Ariz. 138, 144, 781 P.2d 616, 622 (App.1989).

█ Proposition 102 refers to the crime of "forcible sexual assault," conduct defined in A.R.S. sections 13–1406 and –1401(5)(a). Because the criminal conduct proscribed by these sections is wholly unrelated to First Amendment conduct, Soto's reliance on *Steiger* and similar Supreme Court cases is misplaced. He therefore arguably lacks standing to challenge the constitutionality of the statutes referred to in Proposition 102 for vagueness.

But Soto's argument challenges more than the alleged vagueness of a specific statute. He asserts that Proposition 102, by its very language, requires the legislature to define "forcible sexual assault." He focuses on the part of the proposition that requires alleged perpetrators of "other violent felony offenses as defined by statute" to be "prosecuted as adults." He maintains that the crimes of murder and armed robbery are statutorily defined and clearly understood. Therefore, they do not need implementing legislation. *See* A.R.S. §§ 13–1104 (second degree murder), –1105 (first degree murder), and –1904 (armed robbery). The criminal code, however, contains no statute titled "Forcible Sexual Assault." Consequently, Soto contends that transfer here was premature because the legislature has not implemented a statute defining "forcible sexual assault." Thus, without such implementation by the legislature, prosecutors and judges may disagree as to what constitutes "forcible sexual assault." Accordingly, in this limited context, Soto has standing to challenge his automatic transfer.

### B. *"Forcible Sexual Assault" Is A Cognizable Offense*

We reject Soto's argument that because "forcible sexual assault" is not a separately-titled statutory offense, Proposition 102's mandatory transfer provision cannot apply. We hold that Proposition 102 clearly refers to a cognizable criminal offense.

█ Our interpretation of a constitutional provision must achieve "the intent of those who framed the provision and, in the case of an amendment, the intent of the electorate

that adopted it." *Jett v. City of Tucson,* 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994). "If the language is clear and unambiguous, we generally must follow the text of the provision as written." *Id.* We only look beyond the plain language if the provision is not clear on its face. *Id.; McElhaney Cattle Co. v. Smith,* 132 Ariz. 286, 290, 645 P.2d 801, 805 (1982).

▮. The term "forcible sexual assault" is no more vague than murder or armed robbery. It is statutorily defined. "Forcible sexual assault" incorporates two statutory provisions, A.R.S. sections 13–1406 and –1401(5)(a).[1] These provisions must be construed in harmony. *See State ex rel. Larson v. Farley,* 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970) (statutes which relate to same subject should be harmonized "as though they constituted one law," and as if "governed by one spirit and policy"). With regard to Proposition 102, the result of harmonizing these two statutory sections is that a juvenile accused of sexual assault committed without force or threat of force is not subject to the automatic transfer provision. Construing the two related statutory provisions in harmony, we find that "forcible sexual assault" is a cognizable offense.[2] The mandatory transfer provision of Proposition 102 is properly triggered when the indictment alleges, as it did in Soto's case, that a defendant has violated A.R.S. sections 13–1406 and –1401 and the alleged facts support the charge that the sexual assault was the result of force or the threat of force.

### III. Soto Has Not Been Denied Bail Unconstitutionally

▮ Bail is not unconstitutionally excessive merely because a defendant has no means to pay it. *Gusick v. Boies,* 72 Ariz. 233, 237, 233 P.2d 446, 448 (1951); *see* U.S. CONST. amend. VIII; ARIZ. CONST. art. 2,

§§ 15 and 22. The defense argues that to set any bond for Soto "is in effect to hold him without bond." However, the same could be said about many defendants whose indigence makes them unable to produce the required bail amount. For such defendants who are convicted, pre-sentence incarceration credit provides equal protection under the law and ensures that they do not spend more time in custody than those defendants who are financially able to make bail. *See State v. Clements,* 161 Ariz. 123, 126, 776 P.2d 801, 804 (App.1989); *State v. Hamilton,* 153 Ariz. 244, 245, 735 P.2d 854, 855 (App.1987).

▮ Soto proposes that his status as a juvenile ward of the state whose "parent" is ADES distinguishes him from other juvenile defendants who at least have the chance that a parent will supply bail money. Soto offers no authority for this distinction, and we find it unpersuasive. There is no legal basis for Soto's presumption that a juvenile's ability to post bond depends on whether he or she has a parent who can afford to pay bail. The trial court properly assessed bond of $9600 to secure Soto's presence at trial.

### CONCLUSION

Proposition 102 was validly proclaimed law on December 6, 1996. Its provisions require that Soto, who is accused of forcibly sexually assaulting the victim, be automatically transferred to criminal court to be tried as an adult. The amount of bail imposed is not excessive even though Soto does not have the means to pay it and is a ward of the state. We therefore deny special action relief.

GRANT, P.J., and TOCI, J., concur.

---

1. A.R.S. section 13–1406(A) states: "A person commits sexual assault by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person." Section 13–1401 lists definitions used in the chapter. It includes four definitions of the "without consent" element of section 13–1406, only one of which involves the use of force: "The victim is coerced by the immediate use or threatened use of force against a person or property." A.R.S. § 13–1401(5)(a).

2. We note that the implementation legislation for Proposition 102 simply refers to A.R.S. §§ 13–1406 and –1401(5)(a). *See* 1997 Ariz. Sess. Laws Ch. 220, § 72 (adding new A.R.S. § 13–501, eff. July 21, 1997).