IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAY 10 2005

COURT OF APPEALS
DIVISION TWO



| | |
|---|---|
| RENE ANTONIO FRAGOSO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | 2 CA-SA 2005-0001 |
| HON. HOWARD FELL, Judge Pro ) | DEPARTMENT B |
| Tempore of the Superior Court of the ) | |
| State of Arizona, in and for the County of ) | O P I N I O N |
| Pima, ) | |
| ) | |
| Respondent, ) | |
| ) | |
| and ) | |
| ) | |
| THE STATE OF ARIZONA, ) | |
| ) | |
| Real Party in Interest. ) | |
| ) | |

SPECIAL ACTION PROCEEDING

Pima County Cause No. CR-20042912

RELIEF DENIED

Law Office of Cornelia Wallis Honchar
 By Cornelia Wallis Honchar                                                        Tucson
Attorney for Petitioner


Barbara LaWall, Pima County Attorney
 By Taren M. Ellis                                                                          Tucson
Attorneys for Real Party in Interest

P E L A N D E R, Chief Judge.

¶1　　　　In this special action proceeding, petitioner Rene Fragoso challenges the respondent judge's authority to impose a "cash-only" restriction on a pretrial release bond. In an earlier order, we accepted jurisdiction but denied relief, with a decision to follow. This is that decision. We hold that Arizona law, contrary to Fragoso's argument, does not prohibit a cash-only condition on bail and, therefore, that the respondent judge did not exceed his legal authority in imposing that condition on Fragoso. *See* Ariz. R. P. Spec. Actions 3(b), 17B A.R.S.

**BACKGROUND**

¶2　　　　Fragoso was indicted along with numerous codefendants for conspiracy to sell marijuana. The respondent judge initially set Fragoso's bail at $250,000 "cash," but later reduced it to $50,000 "cash." Fragoso moved to modify the conditions of his bail, detailing his personal financial situation and showing he did not have access to $50,000 cash. Fragoso noted, however, that an extended family member (his live-in girlfriend's father) owned real estate worth more than $50,000 and was willing to pledge that property as collateral for a secured bond. Citing article II, § 22 of the Arizona Constitution and Rule 7.2 and 7.3, Ariz. R. Crim. P., 16A A.R.S., Fragoso asked the respondent judge to lift the "cash-only" restriction and permit him to post a $50,000 secured bond. After hearing argument on the motion, the respondent judge denied it. This petition for special action followed.

2

## JURISDICTION

¶3        Fragoso has no adequate remedy by appeal, as any issues involving his pretrial incarceration or release will become moot once his trial begins. *See* Ariz. R. P. Spec. Actions 1(a). His claim that the respondent judge had no legal authority to impose cash-only bail is reviewable by special action. *See* Ariz. R. P. Spec. Actions 3(b). Moreover, this purely legal issue is one of first impression and statewide importance and could readily recur in other cases, making special action review particularly appropriate. *See O'Brien v. Escher*, 204 Ariz. 459, ¶ 3, 65 P.3d 107, 108 (App. 2003). Accordingly, we accept jurisdiction. *See Davis v. Winkler*, 164 Ariz. 342, 345, 793 P.2d 99, 102 (App. 1990) (addressing constitutional and statutory scope of Arizona bail provisions in special action proceeding); *see also Mendez v. Robertson*, 202 Ariz. 128, ¶ 1, 42 P.3d 14, 15 (App. 2002) (accepting special action jurisdiction of denial of motion to reexamine conditions of release, including amount of bail).

## DISCUSSION

¶4        The issue Fragoso poses is whether the respondent judge had "the power to set a 'cash only' bond under the Arizona Constitution, related statutes or Court Rules." Thus, this issue involves a provision in the state constitution, Ariz. Const. art. II, § 22; a criminal statute, A.R.S. § 13-3967; and a rule of criminal procedure, Rule 7, Ariz. R. Crim. P. The United States Constitution is not implicated; although the Eighth Amendment

protects against excessive bail, "there is no federal constitutional right to bail." *Rendel v. Mummert*, 106 Ariz. 233, 235-36, 474 P.2d 824, 826-27 (1970).

¶5 Fragoso argues that a trial court is not authorized under any of the foregoing Arizona provisions to impose a cash-only requirement on bail and, conversely, that he "has a right to post a 'surety bond.'" According to Fragoso, the respondent judge's imposition of cash-only bail violates the provision in article II, § 22(A) of Arizona's Constitution that "[a]ll persons charged with crime shall be bailable by sufficient sureties."[1] He further contends no Arizona statute or rule "mentions, much less, authorizes a species of security known as a 'cash only' bond."

¶6 "Courts should decide cases on nonconstitutional grounds if possible, avoiding resolution of constitutional issues, when other principles of law are controlling and the case can be decided without ruling on the constitutional questions." *In re United States Currency of $315,900.00*, 183 Ariz. 208, 211, 902 P.2d 351, 354 (App. 1995); *see also State v. Korzuch*, 186 Ariz. 190, 195, 920 P.2d 312, 317 (1996) ("In general, . . . we should resolve cases on non-constitutional grounds in all cases where it is possible and prudent to do so."). Accordingly, we first address the meaning and scope of the pertinent Arizona statute, § 13-3967, and rule, Rule 7, Ariz. R. Crim. P., because if cash-only bail is impermissible under one or both of those provisions, we "need not reach the constitutional

---

[1]Article II, § 22(A) sets forth several exceptions for capital cases, certain sexual offenses, particularly dangerous indictees, and other scenarios not present here.

question to decide the case." *R. L. Augustine Constr. Co. v. Peoria Unified Sch. Dist. No. 11*, 188 Ariz. 368, 370, 936 P.2d 554, 556 (1997).

¶7        "We review the interpretation of statutes and court rules de novo." *Cranmer v. State*, 204 Ariz. 299, ¶ 8, 63 P.3d 1036, 1038 (App. 2003).   We evaluate procedural rules using principles of statutory construction, *id.*, reading those rules in conjunction with related statutes and harmonizing the two whenever possible.  *Thielking v. Kirschner*, 176 Ariz. 154, 159, 859 P.2d 777, 782 (App. 1993).    We interpret statutes and rules in accordance with the intent of the drafters, and we look to the plain language of the statute or rule as the best indicator of that intent.  *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).  If the language is clear and unambiguous, we give effect to that language and do not employ other methods of statutory construction.  *State ex rel. Romley v. Hauser*, 209 Ariz. 539, ¶ 10, 105 P.3d 1158, 1160 (2005); *State v. Riggs*, 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997).

¶8        Section 13-3967(D) provides in pertinent part:

> [A] judicial officer may impose any of the following conditions on a person who is released . . . on bail:
>
>        . . . .
>
>        3.   Require the deposit with the clerk of the court of cash or other security, such deposit to be returned upon the performance of the conditions of release.
>
>        . . . .

5

6. Impose any other conditions deemed reasonably necessary to assure appearance as required . . . .

¶9        Rule 7.3(b), Ariz. R. Crim. P., provides in pertinent part:

An order of release may include the first one or more of the following conditions reasonably necessary to secure a person's appearance:

. . . .

(4)  Any other condition not included in (5) or (6) which the court deems reasonably necessary;

(5)  Execution of a secured appearance bond . . . .

"Secured appearance bond" is defined in Rule 7.1(c), Ariz. R. Crim. P., as follows:

A "secured appearance bond" is an appearance bond secured by deposit with the clerk of security equal to the full amount thereof.

"Security" is defined in Rule 7.1(d) in pertinent part as follows:

"Security" is cash, a surety's undertaking, or any property of value, deposited with the clerk to secure an appearance bond.

¶10       We first note that § 13-3967(D) and Rule 7.3(b) are couched in terms of what "a judicial officer may impose" and what "[a]n order of release may include." By their express terms, those provisions affirmatively grant authority to trial courts to determine and fashion appropriate conditions for a defendant's release on bail. Neither the statute nor the rule creates or extends pretrial release rights or various alternatives for defendants in posting bail. For example, § 13-3967(D) does not state that a defendant who seeks release on bail

6

may, at his or her option, post cash or other security. Rather, the statute prescribes the conditions, including cash, that "a judicial officer may impose" on a person released on bail. § 13-3967(D)(3).

¶11        Moreover, the language at issue here is not ambiguous. Neither the applicable statute nor procedural rules expressly prohibit cash-only bail. To the contrary, each provides that a defendant's pretrial release may be conditioned on the deposit of cash. § 13-3967(D)(3); Ariz. R. Crim. P. 7.1(c), (d). And, if that were not clear enough, both the statute and procedural rule specifically extend to the court discretion to impose any condition not expressly listed therein if deemed "reasonably necessary." § 13-3967(D)(6); Ariz. R. Crim. P. 7.3(b)(4). Contrary to Fragoso's suggestion that § 13-3967 "is impermissibly indefinite or uncertain," we find the statute clear and definitive, expressly authorizing a court to impose as a required condition of bail a "deposit . . . of cash" with the clerk of court.[2] § 13-3967(D)(3). And, because the statute is not ambiguous, the rule of

_____

[2]We acknowledge that some courts have held that their court rules did not permit cash- only bail. *State ex rel. Jones v. Hendon*, 609 N.E.2d 541, 543-44 (Ohio 1993) (court rule authorizing as condition of release the deposit of cash did not "vest[] discretion in a judge to impose a 'cash only' bond," but rather, "constitutes but a single condition which the judge may impose—the condition of a bond"); *City of Yakima v. Mollett*, 63 P.3d 177, 180 (Wash. Ct. App. 2003) (cash-only bail not authorized because court rules did not "set [that] out as a discrete condition of release"). We conclude, however, that even if we were to accept Fragoso's argument that Rule 7, Ariz. R. Crim. P., does not explicitly grant a court power to require cash-only bail, it implicitly permits that and certainly does not prohibit it. And, to the extent *Hendon* and *Mollett* might suggest that our statute does not authorize cash-only bail, we disagree.

lenity on which Fragoso relies does not apply.  *See State v. Fell*, 203 Ariz. 186, ¶ 10, 52 P.3d 218, 221 (App. 2002).

¶12       We therefore conclude from the plain language of the statute and rule that their drafters did not intend to preclude the possibility of cash-only bail as a pretrial release condition in appropriate circumstances.  In view of the broad, disjunctive language in those provisions, had their drafters intended to prohibit such a condition, they "presumably would have clearly said so."  *State v. Henry*, 205 Ariz. 229, ¶ 16, 68 P.3d 455, 459 (App. 2003). We also observe that, although the specific legal question before us apparently is of first impression, Arizona decisions repeatedly have involved cases in which bail was either set or posted in cash.  *See, e.g., State v. Urbauer*, 109 Ariz. 584, 585, 514 P.2d 717, 718 (1973) (noting "bail was set at $500,000.00 cash"); *State v. Gutierrez Barajas*, 153 Ariz. 511, 512,  738 P.2d 786, 787 (App. 1987) (cash appearance bond posted); *State v. Bailey*, 120 Ariz. 399, 401, 586 P.2d 648, 650 (App. 1978) (same).

¶13       Having found no prohibition in either § 13-3967 or Rule 7 against the respondent judge's order, we next turn to Fragoso's constitutional argument.  A statute or rule, of course, "cannot circumvent or supplant . . . constitutional requirements."  *United States Currency*, 183 Ariz. at 213, 902 P.2d at 356.  Relying on several out-of-state cases, Fragoso asserts that "[a] 'cash only' bond contradicts Arizona's [constitutional] guarantee of bail through 'sufficient sureties.'"  Ariz. Const. art. II, § 22(A).  We endeavor to harmonize statutes and court rules with the Arizona Constitution, s*ee Aitken v. Industrial*

8

*Commission*, 183 Ariz. 387, 389, 904 P.2d 456, 458 (1995), avoiding any unconstitutional construction. *Larsen v. Nissan Motor Corp. in U.S.A.*, 194 Ariz. 142, ¶ 13, 978 P.2d 119, 124 (App. 1998). We review constitutional issues de novo, including the legal question of whether a statute or a procedural rule violates the state constitution. *See State v. Casey*, 205 Ariz. 359, ¶ 8, 71 P.3d 351, 354 (2003); *United States Currency*, 183 Ariz. at 211, 902 P.2d at 354. In our view, the provision for cash-only bail in § 13-3967(D) and Rule 7 does not offend the Arizona Constitution.[3]

¶14        The language in article II, § 22(A), that "[a]ll persons charged with crime shall be bailable by sufficient sureties," also appears in other state constitutions, many of which contain the same or similar "bailable by sufficient sureties" provision. *See State v. Brooks*, 604 N.W.2d 345, 350 (Minn. 2000) (noting that over two-thirds of state constitutions contain the equivalent provision); 8A Am. Jur. 2d *Bail and Recognizance* § 59, at 346 (1997) (state "[c]onstitutional provisions . . . generally provide that [non-excepted] persons will be bailable by 'sufficient sureties'"). We acknowledge a split in authority among state appellate courts that have addressed whether a constitutional guarantee of bail by sufficient sureties permits cash-only bail. *Compare State v. Briggs*, 666 N.W.2d 573 (Iowa 2003)

_____

[3]"There is a strong presumption that a statute is constitutional, and the party challenging it has the burden of establishing beyond a reasonable doubt that it is invalid." *State v. Klausner*, 194 Ariz. 169, ¶ 13, 978 P.2d 654, 657 (App. 1998). Although Fragoso does not expressly challenge the constitutionality of either § 13-3967 or Rule 7, he implicitly suggests that any interpretation of that statute or rule different from his own would run afoul of our constitution's "sufficient sureties" clause. Ariz. Const. art. II, § 22(A).

(cash-only bail constitutionally permissible), *and Ex parte Singleton*, No. CR-03-1981, 2004 WL 2676659, at \*4 (Ala. Crim. App. Nov. 24, 2004) (same), *with Brooks*, 604 N.W.2d at 354 (cash-only bail offends state constitution), *and State ex rel. Jones v. Hendon*, 609 N.E.2d 541 (Ohio 1993) (same). Fragoso relies heavily on the latter two cases, but we are not persuaded that their reasoning compels the same conclusion about the Arizona Constitution.

¶15 In *Hendon*, the court relied on the fact that the Ohio constitutional provision was silent on the form of bail guaranteed and that the relevant procedural rule did not specifically provide for cash-only bail. 609 N.E.2d at 543-44. As discussed above, however, Arizona's statute and rule do so provide. The court in *Brooks* examined the history of bail from medieval England to the evolution of the sufficient sureties clause in the Pennsylvania colonial constitution in the mid-1680s and the ensuing appearance of the sufficient sureties clauses in the bail provisions in the vast majority of state constitutions. The *Brooks* majority concluded that the history of this constitutional provision relating to bail shows that it was intended to protect the rights of the accused to be free from incarceration before being proved guilty, that the term "sufficient sureties" historically referred to the right to bail by a third person who guarantees to the court that the accused will appear for case proceedings, that the term never encompassed a cash-only concept, and that a cash-only bail condition therefore offended the Minnesota Constitution. 604 N.W.2d at 348-54.

10

¶16     We agree with the dissent in *Brooks*, however, that "[t]he term 'sufficient sureties' certainly does not prohibit cash only bail." *Id*. at 355 (Stringer, J., dissenting); *see also Briggs*, 666 N.W.2d at 582 ("sufficient sureties" language creates "a right to access a surety of some form" but "does not indicate that the framers intended that a person should be bailable by *any* surety without limit"). In addition, Fragoso has cited no authority suggesting that the drafters of the Arizona Constitution intended article II, § 22 to incorporate the customs or conventions pertaining to bail from colonial America or early English law, nor has our independent research discovered any.[4] To the contrary, it is conceivable that bail by cash (or personal property of value such as a horse or a firearm) might have been the only practical form of bail in Arizona when our constitution was adopted in 1910, particularly because of the transient nature of the population and the vast rural areas where a secured bond or a traditional, formal, third-party surety arrangement would not have been feasible.

¶17     More importantly, the lone case addressing the meaning of the Arizona Constitution's sufficient sureties clause supports the state's interpretation of it. In *Rendel*,

---

[4]*See generally The Records of the Arizona Constitutional Convention of 1910* (John S. Goff ed., 1991); Gordon Morris Bakken, *The Arizona Constitutional Convention of 1910*, 1978 Ariz. St. L.J. 1 (1978); John D. Leshy, *The Making of the Arizona Constitution*, 20 Ariz. St. L.J. 1 (1988); Stanley G. Feldman and David L. Abney, *The Double Security of Federalism: Protecting Individual Liberty Under the Arizona Constitution*, 20 Ariz. St. L.J. 115 (1988); Paul Marcus, *State Constitutional Protection for Defendants in Criminal Prosecutions*, 20 Ariz. St. L.J. 151 (1988).

our supreme court stated: "We are of the opinion that the words 'sufficient sureties' mean, at a minimum, that there is reasonable assurance to the court that if the accused is admitted to bail, he will return as ordered until the charge is fully determined." 106 Ariz. at 237, 474 P.2d at 828. Thus, the court essentially recognized that the sufficient sureties clause in Arizona's Constitution simply confirms the primary purpose of bail—to ensure a defendant's appearance to answer to the charges and submit to any ultimate judgment of the court. *See Gusick v. Boies*, 72 Ariz. 309, 311, 234 P.2d 430, 431 (1951) ("[B]ail is exacted for the sole purpose of securing the attendance in court of the defendant."); *State v. Nunez*, 173 Ariz. 524, 526, 844 P.2d 1174, 1176 (App. 1993) ("The primary purpose of an appearance bond is to assure the defendant's presence at the time of trial.").

¶18        We have no basis for concluding that the drafters of our constitution intended to foreclose a cash-only restriction as one of the conditions by which that purpose could be attained. In fact, the use of the word "sufficient" in article II, § 22(A) suggests that a judge or magistrate has the discretion to impose various conditions on the form of bail sufficient to meet that purpose. *See Briggs*, 666 N.W.2d at 582 ("[B]y using the word *sufficient* in the sufficient sureties clause[,] . . . the framers carved out a measure of discretion for the person overseeing the bailing process.").

¶19        Nor are we persuaded by the semantic argument that conditions of cash-only bail violate Arizona's Constitution because they do not constitute or qualify as "sureties." Ariz. Const. art. II, § 22(A); *see Webster's Third New Int'l Dictionary* 2300 (1971)

(definition of "surety" includes "a pledge or other formal engagement given for the fulfillment of an undertaking"); *Black's Law Dictionary* 1483 (8th ed. 2004) (definition of "surety" includes "a formal assurance; esp., a pledge, bond, guarantee, or security given for the fulfillment of an undertaking"); *The Concise Oxford Dictionary of Current English* 1402 (9th ed. 1995) (definition of "surety" includes "money given as a guarantee that someone will do something").[5]

¶20        Our decision is further informed by the full, current text of article II, § 22 of the Arizona Constitution.  Arizona voters approved Proposition 103 in the November 5, 2002, general election.  2003 Ariz. Sess. Laws § 1518.  That proposition amended article II, § 22, in part by adding a new subsection (B), which provides:

> The purposes of bail and any conditions of release that are set by a judicial officer include:

---

[5]Although the dissent questions any resort to "contemporary dictionary entries for 'surety,'" ¶ 28, *infra*, we note that long before Arizona's Constitution was adopted, a well-known dictionary did not limit the definition of "surety" to a third person's engagement to answer for another's appearance in court.  Rather, it included "[t]he state of being sure" and "security for payment."  Noah Webster, *An American Dictionary of the English Language* 1332 (1868).  Other dictionaries in the early 1900's included similar definitions of "surety." 2 *A Standard Dictionary of the English Language* 1809 (Isaac K. Funk ed., 1910) (including in its definitions, "[a] pledge of money deposited or of credit given to secure against loss or damage; security for payment or performance"); *The Concise Oxford Dictionary of Current English* 885 (1912) (including "certainty" in its definitions).  And, although the dissent seeks to avoid giving the term "surety" a "technical meaning," ¶ 28, *infra*, we question whether the dissent's reliance on an early edition of *Black's Law Dictionary* achieves that objective, particularly when only fourteen out of fifty-two delegates to the Arizona constitutional convention were attorneys. *See* John D. Leshy, The Arizona State Constitution 6 (1993).

13

1. Assuring the appearance of the accused.

2. Protecting against the intimidation of witnesses.

3. Protecting the safety of the victim, any other person or the community.

Subsection (B) is no less a part of our constitution, and no less important, than subsection (A).

¶21     Moreover, this most recent amendment confirms and amplifies *Rendel*'s statement about the meaning of "sufficient sureties" in this context. As article II, § 22(B) now makes clear, the primary, if not paramount, purpose of bail under the Arizona Constitution is to guarantee a defendant's appearance in court while protecting victims, witnesses, and the public;[6] the amount of bail and the conditions of release set by a judicial officer are the tools by which those objectives can be effectuated. According a judicial officer the discretion to impose a cash-only condition of release as one such tool is not only statutorily authorized but also entirely consistent with article II, § 22 of our state constitution.

¶22     Finally, nothing in this decision should be interpreted as blanket authority for cash-only bail. A trial court's discretion to set conditions of bail is not unfettered. *See Gusick v. Boies*, 72 Ariz. 233, 237-38, 233 P.2d 446, 448-49 (1951) (trial court abused

---

[6]That purpose, now expressly stated in Arizona's Constitution, materially distinguishes *State v. Brooks*, 604 N.W.2d 345, 350 (Minn. 2000), in which the court construed the sufficient sureties clause in Minnesota's Constitution as "intended to protect the accused rather than the courts."

discretion in setting bail amount far above what defendant could possibly raise). A judicial officer setting bail must "impose the least onerous condition or conditions . . . which will reasonably assure the person's appearance." Ariz. R. Crim. P. 7.2(a). But Fragoso does not contend that the cash-only condition was not "reasonably necessary to secure [his] appearance." Ariz. R. Crim. P. 7.3(b). Therefore, any issue of whether the respondent judge abused his discretion in setting Fragoso's bail at $50,000 cash is not posed here, nor is the record before us complete enough to answer that question even had Fragoso raised it. We hold only that cash-only bail is not prohibited by, but rather, in appropriate circumstances is permissible under, article II, § 22 of the Arizona Constitution, § 13-3967, and Rule 7.

## CONCLUSION

¶23       The respondent judge acted within his legal authority in denying Fragoso's motion to set a secured appearance bond. Accordingly, although we accept jurisdiction of Fragoso's special action, we deny relief.

_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Judge

15

F L Ó R E Z, Presiding Judge, dissenting.

¶24        I respectfully dissent.  Although I agree that special action jurisdiction is appropriate for the reasons stated in the majority opinion, I would grant relief because, in my view, cash-only bail violates the right to bail by sufficient sureties guaranteed by article II, § 22(A) of the Arizona Constitution.  Moreover, I do not agree that the relevant procedural rules and statute clearly and unambiguously permit a cash-only restriction on bail; I would construe them otherwise, in harmony with my interpretation of the constitutional provision.

¶25        Article II, § 22 of the Arizona Constitution, as adopted in 1910, provided in pertinent part:  "All persons charged with crime shall be bailable by sufficient sureties ."  *The Records of the Arizona Constitutional Convention of 1910*, 1401 (John S. Goff ed., 1991).  That language, now in article II, § 22(A), has remained in effect since.  I disagree with the majority's construction of this provision that the word "surety," as used in this provision, can encompass cash-only bail.

¶26        In construing a provision of the Arizona Constitution, our primary goal is to effectuate the intent of the framers.  *McElhaney Cattle Co. v. Smith*, 132 Ariz. 286, 645 P.2d 801 (1982).  "To this end, we first examine the plain language of the provision." *Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994).  "'[W]hen a constitutional provision is clear on its face and is logically capable of only one interpretation,' we simply

16

follow that text." *Ariz. State Democratic Party v. State*, 209 Ariz. 103, ¶ 8, 98 P.3d 214, 218 (App. 2004), *quoting Ward v. Stevens*, 86 Ariz. 222, 228, 344 P.2d 491, 495 (1959).

**¶27** As the majority notes, many states have the exact or substantially similar "sufficient sureties" language in their constitutions. In *State v. Brooks*, 604 N.W.2d 345 (Minn. 2000), the Minnesota Supreme Court addressed whether cash-only bonds were permissible under the Minnesota Constitution, which contains an equivalent sufficient sureties provision. In an opinion that traced the history of the phrase in detail, the *Brooks* court examined the history of bail from medieval England to the evolution of the sufficient sureties clause in the precursor to the Pennsylvania colonial constitution in 1682 and the resulting appearance of the sufficient sureties clauses in the bail provisions in approximately two-thirds of state constitutions. Similarly, in *State v. Briggs*, 666 N.W.2d 573 (Iowa 2003), the Iowa Supreme Court undertook a similar historical analysis of the phrase "sufficient sureties," which also appears in Iowa's constitutional bail provision. In the absence of any evidence to the contrary, I can only deduce that Arizona's sufficient sureties clause shares this same provenance. No purpose would be served by repeating these analyses, save to note both opinions are consistent in reporting that the word "surety" used in the context of bail referred historically to a third person who guaranteed the appearance of the accused and who would be answerable if the accused did not appear, a role that evolved into the professional bail bondsperson. This conclusion is confirmed in 8A Am. Jur.

17

2d *Bail and Recognizance* § 51 (1997), which sets forth the nature and role of a surety in the bail process:

> Generally, in a bail bond, the surety acts as a guarantor of the defendant's appearance under the risk of forfeiture of the bond. The surety guarantees that the defendant will appear at the specific time and place and if the defendant fails to appear at the specified time and place, the surety is absolutely indebted to the state for the amount of the bond.

¶28    I am not persuaded by the majority's reliance on contemporary dictionary entries for "surety" that, in addition to "third person" definitions consistent with that quoted above, contain definitions that can arguably be read to include cash. First, it is not clear that those definitions of surety would be appropriate when the term is used in a constitutional provision pertaining strictly to bail. "'[T]he law uses familiar legal expressions in their familiar legal sense.'" *Bradley v. United States*, 410 U.S. 605, 609, 93 S. Ct. 1151, 1154, 35 L. Ed. 2d 528, 532 (1973), *quoting Henry v. United States*, 251 U.S. 393, 395, 40 S. Ct. 185, 186, 64 L. Ed. 2d 322, 323 (1920). Second,

> [i]n determining the meaning of words used in a . . . constitutional provision, we must take into consideration the surrounding circumstances at the time when they were used, and they should be given a definition consonant with ideas then prevailing, rather than a technical meaning which may have attached to them perhaps a generation or more after they were first used.

*Maricopa County Mun. Water Conservation Dist. No. 1 v. Southwest Cotton Co.*, 39 Ariz. 65, 77, 4 P.2d 369, 374 (1931), *modified on rehearing*, 39 Ariz. 367, 7 P.2d 254 (1932). Bearing these principles in mind, and to the extent this issue can be resolved by consulting

a dictionary, I find more persuasive the *only* two definitions for "surety" found in the edition

of *Black's* published the same year our constitution was adopted:

> SURETY. A surety is one who at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor.
>
> A surety is defined as a person who, being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person who ought himself to have made payment or performed before the surety was compelled to do so.

*Black's Law Dictionary* 1127 (2d ed. 1910) (citations omitted).

¶29     I am thus convinced that bail by surety at the turn of the last century had but

one meaning: bail through a third person who assumes legal responsibility for the

appearance of an accused. Indeed, that is the meaning of the term our supreme court

employed in the sole Arizona case interpreting our constitutional provision (and the primary

Arizona case relied on by the majority), *Rendel v. Mummert*, 106 Ariz. 233, 236, 474 P.2d

824, 827 (1970): "Sureties on bail or recognizance may at any time take their principal into

custody for the purpose of surrendering him in exoneration of their liability."

¶30     The framers of article II, § 22 were free to use more general terms, such as

"guarantees," "assurances," or "securities," but chose instead the word "sureties," a term of

art with a far more specific meaning. Having seen nothing even remotely suggesting that the

Arizona framers intended that the phrase have a different meaning in this state, I can only

19

conclude that the Arizona Constitution guarantees a defendant the right to post bail through a secured bond posted by a bondsperson. In my view, then, a cash-only restriction on bail violates the right to bail by sufficient sureties guaranteed by the Arizona Constitution.

¶31 I do not disagree with the majority that "the primary purpose of bail [is] to ensure a defendant's appearance to answer to the charges and submit to any ultimate judgment of the court." *Supra* ¶ 17; *see Rendel*. I also acknowledge that this tenet has recently been incorporated into our constitution, along with language establishing that bail also serves to protect victims, witnesses, and others who might be affected by a defendant's pretrial release. *See* Ariz. Const. art. II, § 22(B). But those principles are perfectly compatible with my interpretation of article II, § 22(A). In guaranteeing bail by *sufficient* sureties, the provision recognizes a judicial officer's discretion to set the *amount* of the bond at a level sufficient to effectuate those ends, limited only by the rarely reached constitutional protections against excessive bail.[7] The sufficient sureties provision does, however, limit the judicial officer's discretion to choose a particular *form* the bond must take, a decision that could have the practical effect of making bail inaccessible to a defendant who could otherwise post bail. As the Ohio Supreme Court found in addressing the same issue raised by its court rule and equivalent constitutional provision:

---

[7]U.S. Const. amend. VIII; Ariz. Const. art. II, § 15; *see also Soto v. Superior Court*, 190 Ariz. 450, 455, 949 P.2d 539, 544 (App. 1997) ("Bail is not unconstitutionally excessive merely because a defendant has no means to pay it.").

20

> Once a judge . . . sets the amount of bond, we find no legitimate purpose in further specifying the form of bond which may be posted. Indeed, the only apparent purpose in requiring a "cash-only" bond to the exclusion of the other forms provided in [the procedural rule] is to restrict the accused's access to a surety and, thus, to detain the accused in violation of [the Ohio constitutional right to bail by sufficient sureties].

*State ex rel. Jones v. Hendon*, 609 N.E.2d 541, 544 (Ohio 1993).

¶32 Because of my resolution of the constitutional issue, I also dissent from the majority's holding that A.R.S. § 13-3967(D) and Rule 7, Ariz. R. Crim. P., permit a judicial officer to place a cash-only restriction on bail, constructions I would find unconstitutional. Although I find the majority's construction of the statute and rule reasonable, I do not agree that they clearly and unambiguously permit a cash-only restriction on bail.

¶33 We have a duty to construe statutes and rules in a constitutional manner, and when confronted with one interpretation that may be constitutional and one that may not, we adopt a construction that avoids a constitutional conflict unless that construction is plainly contrary to the drafters' intent. *See Riepe v. Riepe*, 208 Ariz. 90, 91 P.3d 312 (App. 2004). "Indeed, if a statute can be constitutionally construed, we must adopt that construction." *Emmett McLoughlin Realty, Inc. v. Pima County*, 203 Ariz. 557, ¶ 4, 58 P.3d 39, 41 (App. 2002). Bearing that in mind, as well as the rules of construction for statutes and rules accurately set forth in the majority opinion, *supra* ¶ 7, I would construe Rule 7 and § 13-3967(D) as follows.

¶34 Rule 7.3(b) sets forth six nonmandatory conditions that may be placed on an order of release if "reasonably necessary to secure a person's appearance." One of these conditions is the "[e]xecution of a secured appearance bond." Ariz. R. Crim. P. 7.3(b)(5). I agree that Rule 7.1(c) and (d) allow a secured appearance bond to be secured by cash. But I disagree that Rule 7.1 gives a trial court authority to make cash a *condition* of bail; Rule 7.1 is merely a *definitional* section. Rule 7.3(b) sets forth the permissible *conditions* of release that may be imposed, one of which is a secured appearance bond. An equally justifiable reading is that these rules grant a trial court the authority to condition a defendant's release on the posting of a secured appearance bond, set by the court at an appropriate amount, but permit the defendant to post that bond in any of the three forms—cash, property, or a surety's undertaking—provided in Rule 7.1(d).

¶35 I also disagree that Rule 7.3(b)(4), which provides that a release order may include "[a]ny other condition not included in (5) or (6)," gives a trial court the authority to impose a cash-only condition on bail. The comment to Rule 7.3(b) makes clear that the conditions set forth in that rule are prioritized numerically in order of imposition and severity and that the kinds of conditions contemplated under subsection (4) should be less onerous than a fully secured appearance bond under subsection (5). As the facts of this case illustrate, a release bond conditioned on posting cash in full can be more severe than a release bond secured by property or a surety's undertaking. Moreover, subsection (4) is expressly limited to conditions outside subsection (5), which governs release conditioned

22

on a secured appearance bond. Because cash-in-full bail is a form of secured appearance bond, *see* Rule 7.1(c) and (d), subsection (4) cannot encompass such a condition.

¶36 This construction of Rule 7 is consistent with my interpretation of article II, § 22(A); it is also consistent with the appearance bond form adopted by our supreme court. Ariz. R. Crim. P. Form 7, 17 A.R.S. The form features a section in which the amount of the bond set by the judicial officer is entered but then alternative sections for either (1) the defendant to deposit cash or property in the full value of the bond, or (2) the defendant's *surety* to assume the obligation for the bond. Notably, in both the rule and the form, the word "surety" is always used in the traditional sense and can never be read to mean "cash."

¶37 I would similarly construe the statute. Section 13-3967(D) also sets forth six enumerated release conditions a judicial officer may impose, including the condition in subsection (3): "Require the deposit with the clerk of the court of cash or other security, such deposit to be returned upon the performance of the conditions of release." Although this language might be stronger and more supportive of the majority's position than the language of Rule 7, I do not agree that this provision unambiguously authorizes cash-only bail, especially in light of the incongruent construction of the rule. *See Groat v. Equity Am. Ins. Co.*, 180 Ariz. 342, 347, 884 P.2d 228, 233 (App. 1994) ("Rules of procedure and statutes are read in conjunction with each other and harmonized whenever possible.").

¶38 Section 13-3967(D)(3) authorizes a judicial officer to require a *deposit*, the form of which can be "cash or other security." It is not clear that the statute gives a judicial

23

officer discretion to specify the form of the deposit; an equally plausible construction is that the statute merely sets forth the acceptable forms of deposit a defendant may post. The Washington Court of Appeals addressed virtually the same question in the context of its court rule, which is constructed similarly to our statute—listing several enumerated conditions of release, one of which contains as alternatives a secured bond or cash—and concluded: "If the rule drafters intended to authorize 'cash only' bail, they could have easily set it out as a discrete condition of release." *City of Yakima v. Mollett*, 63 P.3d 177, 180 (Wash. Ct. App. 2003). Similarly, our legislature could have permitted cash only bail as a discrete condition of release, but did not.

¶39 As for the majority's conclusion that cash-only bail is authorized under § 13-3967(D)(6), which provides that a trial court may "[i]mpose any other condition deemed reasonably necessary to assure appearance as required," the *Mollett* court addressed the same argument based on a similar ultimate catch-all provision in the Washington rule. The *Mollett* court rejected that argument as well, again reasoning that a cash-only provision would have been expressly enumerated had it been an intended option. I would construe § 13-3967(D)(6) in the same manner.

¶40 The *Mollett* court's construction of the Washington rule is best understood in the context of the issues facing that court. Although a state constitutional challenge had also been raised to the cash-only bail imposed in that case, the court expressly avoided the constitutional issue by finding that the rule did not permit cash-only bail. The sufficient

24

sureties provision in the Washington Constitution is identical to Arizona's. *See* Wash. Const. art. I, § 20 ("All persons charged with crime shall be bailable by sufficient sureties . . . ."); *see also Westerman v. Cary*, 892 P.2d 1067 (Wash. 1994). The unstated lesson in the *Mollett* holding, then, is that a contrary construction, such as that the majority adopts here, would have implicated Washington's sufficient sureties clause. The majority of the Arizona Declaration of Rights, including article II, § 22, was taken verbatim or nearly verbatim from the Washington Constitution. Stanley G. Feldman and David L. Abney, *The Double Security of Federalism: Protecting Individual Liberty Under the Arizona Constitution*, 20 Ariz. St. L.J. 115, 120-21 (1988). I therefore find the reasoning in *Mollett* particularly compelling. *See Phelps v. Firebird Raceway, Inc.*, 207 Ariz. 149, ¶ 12, 83 P.3d 1090, 1093 (App. 2004) (Oklahoma's experience with specific legal doctrine "especially enlightening" when relevant state constitutional provisions share identical language).

¶41 I would find that neither Rule 7 nor § 13-3967(D) permits a cash-only restriction on bail, although they certainly permit a defendant to be released on bail who satisfies the bond amount with cash in full. Such a construction of the rule and statute would be compatible with my interpretation of article II, § 22(A).

_____
M. JAN FLÓREZ, Presiding Judge

25