213 P.3d 251

**SALT RIVER SAND AND ROCK COMPANY, a Division of the Salt River Pima–Maricopa Indian Community, Petitioner,**

v.

**The Honorable Thomas DUNEVANT, III, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Gravel Resources of Arizona, an Arizona general partnership, Real Party in Interest.**

No. 1 CA–SA 09–0083.

Court of Appeals of Arizona, Division 1, Department B.

June 30, 2009.

104

Osborn Maledon PA By Thomas L. Hudson, and Michael S. Catlett, Phoenix, Attorneys for Petitioner.

Wright & Associates By Lawrence C. Wright and Ryan P. Dyches, Mesa, Attorneys for Real Party in Interest.

## OPINION

NORRIS, Judge.

¶ 1 In this special action, petitioner Salt River Sand and Rock Company ("Salt River") asks us to reverse an order entered by the superior court denying its motion to reduce the amount of a bond required for a stay pending appeal of an $18.4 million judgment entered against it and in favor of Gravel Resources of Arizona ("Gravel Resources"). Applying this court's decision in *Bruce Church, Inc. v. Superior Court*, 160 Ariz. 514, 774 P.2d 818 (App.1989), the superior court held that case limited its "discretion to set a bond below the amount of the judgment (at least when the reduction is to account for the debtor's inability to pay), as opposed to its broad discretion in crafting the form of the bond." Salt River argues the superior court's discretion was not so limited and asks us to clarify *Bruce Church* and the standards a superior court should apply in determining the bond amount when a judgment debtor is unable to post a bond in the full amount of the judgment together with costs, interest and damages attributed to the stay pending appeal.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Salt River mines aggregates for use in concrete mix and other construction materials. It currently has over 100 employees and although adversely affected by the economic downturn, it continues to conduct business. Salt River is a separate division of the Salt River Pima–Maricopa Indian Community. The Community waived sovereign immunity only for Salt River. Accordingly, Salt River maintains separate audited financial statements and makes periodic profit distributions to the Community when it is able to do so. Pursuant to the ordinance creating Salt River as a division of the Community, Salt River may borrow money from the Community, but "[a]ny borrowing ... shall be treated as a like borrowing from any commercial lender."

¶ 3 In 1993, Salt River took over a mining lease agreement with Gravel Resources to mine aggregates from Gravel Resources'

property. In 2003, a dispute arose between the parties over mining royalties owed under the lease. The dispute led to a lawsuit and eventually to an $18.4 million judgment in Gravel Resources' favor.[1] The superior court stayed execution of the judgment to give Salt River time to obtain a supersedeas bond in the amount of the judgment plus costs, interest and damages resulting from the stay ("judgment").

¶4 Subsequently, Salt River advised the court it was unable to post a supersedeas bond in the full amount of the judgment. By motion, it asked the court to reduce the amount of the bond to $5.5 million and allow it to post alternate security consisting of first, a pledge of real property worth at least $5.5 million by a third party pursuant to an arbitration award entered in favor of Salt River and against the third party,[2] and second, limitations that would protect Gravel Resources from a reduction in Salt River's assets pending appeal.

¶5 In making this request, Salt River presented the court with evidence it was unable to borrow even $5.5 million except from the Community; it could not obtain a supersedeas bond without collateral consisting of cash, a letter of credit or income-producing property; its assets, mostly inventory and heavy equipment, had a value of approximately $21.1 million but were not readily subject to liquidation; and if a stay pending appeal was not entered and Gravel Resources began collection efforts, it would likely be forced to shut down. Opposing a reduced bond, Gravel Resources argued Salt River had failed to demonstrate it could not obtain a supersedeas bond in the full amount of the judgment, especially if the Community elected to assist its efforts to do so. It further argued that even if Salt River could not obtain a bond in the amount of the judgment, the alternate security it had offered was inadequate because it did not provide protection equivalent to that provided by a supersedeas bond.

¶6 After oral argument, the court denied Salt River's request for a reduced bond and alternate security. Although it rejected Gravel Resources' argument Salt River could in fact post a full supersedeas bond because of its relationship with the Community, the court, relying on *Bruce Church*, concluded it had no discretion to "set" a bond below the amount of Gravel Resources' judgment:

> However, the Court must also insure that the alternative bond preserve the judgment creditor's ability to fully recover. *Bruce Church, Inc. v. Superior Court*, 160 Ariz. 514, 517 [774 P.2d 818] (App.1989), which both sides agree is the controlling case, supports Gravel Resources. True, *Bruce Church* holds that "the rule and the inherent discretion and power of the trial court allow for flexibility in the determination of the nature *and extent* of the security required to stay the execution of the judgment pending appeal." *Id.* (emphasis added). But it goes on: "There must be an objective demonstration that the judgment debtor has the financial strength to proficiently respond to a money judgment *and* that the same financial strength and ability to respond will remain undiluted during appeal." *Id.* (emphasis in original). This language limits, if it does not remove altogether, the Court's discretion to set a bond below the amount of the judgment (at least when the reduction is to account for the debtor's inability to pay), as opposed to its broad discretion in crafting the form of the bond. None of the alternatives [Salt River] proposes is adequate to guarantee payment in full of Gravel Resources' judgment. This Court's hands are therefore tied.

## JURISDICTION

¶7 In the exercise of our discretion, we accept special action jurisdiction. Salt River has no equally plain, speedy and adequate remedy by appeal. *Bruce Church*, 160 Ariz. at 515, 774 P.2d at 819 (accepting

---

1. For additional background regarding this dispute, *see Gravel Resources of Ariz. v. Hills*, 217 Ariz. 33, 170 P.3d 282 (App.2007).

2. The arbitration award required the third party to "pledge and encumber a sufficient amount of assets to reasonably satisfy Gravel Resources of Arizona and its Receiver that they will be able to later recover $5.5 Million from those assets in satisfaction of its judgment against Salt River."

special action jurisdiction because there is no adequate remedy by appeal to correct alleged error by trial court in setting amount of supersedeas bond). It is undisputed that absent a stay, collection efforts will likely put Salt River out of business. Further, the core issues presented in this special action are whether the superior court has discretion to set a supersedeas bond for less than the amount of a judgment, and if so, what factors should it consider in determining alternate security in that situation. These issues present questions of law and are of statewide importance. *Green v. Nygaard,* 213 Ariz. 460, 462, ¶ 6, 143 P.3d 393, 395 (App.2006).

## DISCUSSION

¶ 8 Arizona Rule of Civil Appellate Procedure 7(a)(2) grants the superior court authority to condition a stay of a judgment pending appeal on a bond that is in a "different amount" from the judgment: "[t]he bond shall be conditioned for the satisfaction in full of the judgment remaining unsatisfied, ... unless the superior court, ... for good cause shown, fixes a different amount or orders security or imposes conditions other than or in addition to the bond." [3] The plain language of a rule is the "best indicator" of the supreme court's intent in promulgating it. *Fragoso v. Fell,* 210 Ariz. 427, 430, ¶ 7, 111 P.3d 1027, 1030 (App.2005). If the language of the rule is clear and unambiguous, we give effect to that language. *Id.* Pursuant to the plain language of Rule 7(a)(2), a court has discretion to fix the bond in an amount less than the amount of the judgment. An amount less than the amount of the judgment is, necessarily, a "different amount." The

plain language of the rule further grants the court discretion to order security or impose conditions other than or in addition to the bond.

¶ 9 We construed Rule 7(a)(2) in *Bruce Church.* Relying on federal case law,[4] we explained the purpose of a supersedeas bond is to preserve the status quo pending appeal. 160 Ariz. at 517, 774 P.2d at 821. Noting that "normally" a supersedeas bond should be posted in an amount that secures the total judgment, inclusive of costs, interest and damages which might be attributed to the stay pending appeal, we nevertheless agreed with federal authorities that a court has the inherent discretion and power to allow for flexibility in the determination of the "nature and extent of the security required to stay the execution of the judgment pending appeal." *Id.* We went on to state, again citing federal case law, "[i]f the trial court finds that the existence of extraordinary facts and circumstances call for departure from the usual cash bond, it may certainly pursue this avenue." *Id.* We also explained the judgment debtor bore the burden of proving the existence of a secure alternative to the usual cash bond. *Id.*

¶ 10 We then made the following statement—a statement relied on by Gravel Resources and by the superior court in ruling that our decision limited its discretion to set a bond below the amount of the judgment when the reduction was to account for the debtor's inability to pay:

> There must be an objective demonstration that the judgment debtor has the financial strength to proficiently respond to a mon-

---

**3.** Rule 7(a)(2), in full, states:

The bond shall be conditioned for the satisfaction in full of the judgment remaining unsatisfied, together with costs, interest, and any damages reasonably anticipated to flow from the granting of the stay including damages for delay, if for any reason the appeal is dismissed or if the judgment is affirmed, and to satisfy in full such modification of the judgment and costs, interest, and damages as the appellate court may adjudge and award, unless the superior court, after notice and hearing and for good cause shown, fixes a different amount or orders security or imposes conditions other than or in addition to the bond. In determining the amount of the bond, the court shall

consider, among other things, whether there is other security for the judgment, or whether there is property in controversy which is in the custody of the sheriff or the court.

**4.** *Bruce Church* relied on federal authorities, some of which interpreted former Federal Rule of Civil Procedure 73(d). Although Rule 73(d) was abrogated in 1968, cases interpreting the rule remain instructive. *See* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2905 (2d ed. 1995 & Supp.2009) ("[F]ormer Rule 73(d) described what always has been good practice on a supersedeas bond, and ... is still a useful guide on these matters.").

ey judgment *and* that the same financial strength and ability to respond will remain undiluted during appeal. The fashioning of substitute security and its supervision pending appeal are the duty of the trial court.

*Id.* (citations omitted).

¶ 11 In making this statement, we cited *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189 (5th Cir. 1979). In that case, the district court had set a $10,000 supersedeas bond on a $270,985 judgment because the judgment creditor had failed to present any evidence the judgment debtor lacked sufficient financial resources to respond to the judgment if it was affirmed on appeal. *Id.* at 1190. Not only did the appellate court rule the judgment debtor, not the judgment creditor, bore the burden of "objectively" demonstrating why a full security supersedeas bond should not be required, but the court also went on to describe circumstances when such a bond would be unnecessary: first, when the judgment debtor can demonstrate it can "facilely respond" to the judgment and presents "a financially secure plan for maintaining that same degree of solvency during the period" of the appeal; and second, when the judgment debtor can demonstrate that its current financial condition "is such that the posting of a full bond would impose an undue financial burden." *Id.* at 1191. In the second situation, the appellate court explained a trial court would have "discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection of the judgment creditor." *Id.*

¶ 12 The statement in *Bruce Church* on which the superior court and Gravel Resources relied applies only to the first circumstance described in *Poplar Grove*—when

the judgment debtor demonstrates it can "facilely respond" to satisfy the judgment as of the date of the judgment and pending appeal. This statement should not be read to limit the superior court's discretion in the event the second circumstance—the judgment debtor demonstrates the posting of a full supersedeas bond would subject it to an undue financial burden—arises. What we said in *Bruce Church* simply does not address what a court should require of a judgment debtor when it has demonstrated that it does not have sufficient financial resources to post the "normal" supersedeas bond. Therefore, as we clarify here, in that situation, the court has discretion to fashion "some other arrangement for substitute security."[5] *Poplar Grove,* 600 F.2d at 1191. *See also Miami Int'l Realty Co. v. Paynter,* 807 F.2d 871, 873–74 (10th Cir.1986); *Olympia Equip. Leasing Co. v. W. Union Tel. Co.,* 786 F.2d 794, 796 (7th Cir.1986); *Texaco Inc. v. Pennzoil Co.,* 784 F.2d 1133, 1154–55 (2d Cir. 1986), *rev'd on other grounds,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Fed. Prescription Serv., Inc. v. Am. Pharm. Assoc.,* 636 F.2d 755, 757–58 (D.C.Cir.1980); *Athridge v. Iglesias,* 464 F.Supp.2d 19, 23–25 (D.D.C.2006); *Alexander v. Chesapeake, Potomac, and Tidewater Books, Inc.,* 190 F.R.D. 190, 191–94 (E.D.Va.1999).

¶ 13 The federal case law cited in *Bruce Church* demonstrates a court has discretion to arrange an alternative to the "normal" supersedeas bond when requiring a full cash bond would impose an undue financial burden on the judgment debtor. For example, we cited *C. Albert Sauter Co. v. Richard S. Sauter Co.,* 368 F.Supp. 501 (E.D.Pa. 1973). In that case, the judgment debtor presented uncontroverted financial statements demonstrating it did not have sufficient assets to satisfy the judgment of $1.2

---

5. In *Bruce Church* we stated it would be error for a trial court to fix a supersedeas bond in an amount substantially less than the judgment. 160 Ariz. at 515, 774 P.2d at 819. Normally, that is the case: a court should require a judgment debtor to post a supersedeas bond in the amount required under Rule 7(a)(2). But, as we also recognized in *Bruce Church*, a court has discretion to fix alternate security that protects the judgment creditor during the pendency of the appeal. *Id.* at 517, 774 P.2d at 821. That discretion is properly exercised when the court is presented with extraordinary facts and circumstances. *Id.* Here, we clarify that the standard relied on by Gravel Resources and the superior court from *Bruce Church* is applicable to situations when (as is not the case here) a judgment debtor is able to prove it can and will be able to satisfy the judgment.

million and was unable to obtain a bond in the amount of the judgment plus fees and costs. *Id.* at 520. The district court recognized execution of the judgment was "likely to terminate [the judgment debtor] as a going concern and eliminate it as a competitor in interstate commerce." *Id.* The district court then conditioned a stay pending appeal on alternative security that would "adequately preserve the assets of the [judgment debtor] for execution, should the [judgment creditor] prevail on appeal." *Id.*

¶ 14 Similarly, we also cited *Trans World Airlines, Inc. v. Hughes,* 515 F.2d 173 (2d Cir.1975). In that case, the appellate court commented with approval on the district court's "wise exercise of its discretion" in fashioning an alternative to requiring the judgment debtor to post a supersedeas bond in the usual amount of the judgment plus interest and costs, which would have totaled more than $161 million. *Id.* at 176–78. Before the district court, the judgment debtor had argued it could not obtain a supersedeas bond in the full amount of $161 million without "requiring it to engage in disruptive and time-consuming liquidation of assets or a costly and time-consuming financing program." *Trans World Airlines, Inc. v. Hughes,* 314 F.Supp. 94, 95 (S.D.N.Y.1970). The judgment debtor also had produced letters from surety companies indicating a $161 million bond "could be arranged only if secured with a deposit of collateral in the form of cash or government bonds or documents of similar liquidity in the full amount of the bond." *Id.* at 96. The district court, recognizing a bond in the full amount of $161 million was not "practicable under the circumstances," had permitted alternate security in the form of a cash bond of $75 million and assurances from the judgment debtor that it would maintain a net worth three times the amount of the $86 million balance. *Id.* at 98.

¶ 15 Here, Salt River presented evidence it would suffer an undue financial burden if it was required to post a supersedeas bond in the full amount of the judgment. Salt River presented evidence it did not have the financial resources to post a full supersedeas bond,[6] and if the judgment was not stayed pending appeal and Gravel Resources began collection efforts, it would likely go out of business. The record before the superior court also reflected Salt River's assets primarily consisted of inventory and heavy equipment not readily subject to liquidation and therefore not helpful for purposes of obtaining a supersedeas bond or immediately satisfying the judgment. *See HCB Contractors v. Rouse & Assocs.,* 168 F.R.D. 508, 512 (E.D.Pa.1995) ("Having no substantial liquid assets other than their interests held in the respective project elements, I find that the [judgment debtors] are unable to provide a cash bond or obtain a supersedeas bond."). Under these circumstances,[7] the superior court had discretion to fix a bond in an amount less than Gravel Resources' judgment.

¶ 16 That brings us to the next question: what factors should a court consider in determining alternate security? As we recognized in *Bruce Church,* the purpose of posting a supersedeas bond is to preserve the status quo pending appeal. 160 Ariz. at

---

**6.** As it did in the superior court, Gravel Resources argues here that Salt River could have obtained a full supersedeas bond through a loan or other financial support from the Community. The Community, however, was only obligated to lend to Salt River like any other "commercial lender." The uncontroverted evidence presented by Salt River demonstrated no commercial lender would post a supersedeas bond in the full amount of the judgment. Further, the superior court rejected this argument because it had previously ruled the Community had not "waived its sovereign immunity in regard to its dealings with [Salt River]" and could not be compelled to "place its assets at stake either as principal or as lender." Although, in this special action, Gravel Resources has expressed its displeasure with the court's resolution of the sovereign immunity issue, it has not briefed that issue, and thus, we do not address it.

**7.** A court may consider other factors in determining whether a judgment debtor would suffer an undue financial burden. For instance, a court may take into account the effect of a bond on the judgment debtor's other creditors. *See Olympia Equip.,* 786 F.2d at 798 (a court is "not required to ignore the interests of other creditors when deciding how much security to make the defendant post as a condition of being allowed to stave off execution of the judgment pending appeal").

517, 774 P.2d at 821. The bond should protect the status quo at the time of judgment because "[a] judgment creditor's right to secure his money judgment during the appeal process is no less important than the judgment debtor's right to be free from execution while exercising his appellate rights." *Id.* Thus, in determining alternate security, a court must balance the judgment creditor's right to secure the money judgment against the judgment debtor's appellate rights. *See Texaco,* 784 F.2d at 1154 ("[W]hen setting supersedeas bonds courts seek to protect judgment creditors as fully as possible without irreparably injuring judgment debtors.").

¶ 17 Without a stay, the judgment creditor would be entitled to execute on the judgment debtor's assets, subject of course to the rights and priorities of other creditors. The analysis should therefore begin with assessing the situation facing the parties as of the date of the judgment. To preserve the status quo, the superior court must consider the collectable value of the judgment debtor's assets as of the date of the judgment. This evaluation requires the court to consider the liquidity of the judgment debtor's assets and the amount the judgment debtor could immediately pay without suffering undue harm. The court must further consider any complexities the judgment creditor would face in pursuing its rights to the security if the judgment is affirmed on appeal. And, because the judgment creditor is being asked to wait to enforce the judgment, the judgment creditor is entitled to adequate assurances that during the appeal the judgment debtor will conduct its business in the ordinary course and will not jeopardize the alternate security. These factors are not exclusive. Each judgment debtor is different and other factors may be relevant in determining how to best preserve the status quo when fashioning alternate security.

¶ 18 Here, in addition to the $5.5 million bond, Salt River offered proposed alternate

security consisting of a pledge of real property worth at least $5.5 million and restrictions on its business operations to preserve the value of its assets pending appeal.[8] Because the superior court believed it did not have discretion to consider the alternate security proposed by Salt River, it did not evaluate this proposal. On remand, the court should do so in accordance with the principles set forth above.

## CONCLUSION

¶ 19 For the foregoing reasons we accept special action jurisdiction and grant relief clarifying the superior court had and has discretion to condition a stay of the judgment in favor of Gravel Resources on a reduced bond and alternate security. We thus remand for further proceedings consistent with this opinion.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge, and MICHAEL J. BROWN, Judge.

---

8. Gravel Resources argues Salt River's proposed alternate security was insufficient to preserve the status quo because it failed to equal the amount Gravel Resources could collect from Salt River if it could execute on the judgment. In making this argument, it points to Salt River's 2009 balance sheet which reflected a total asset value of $21.1 million. Because we are remanding to the superior court to evaluate Salt River's proposed alternate security, we do not address this argument. We note, however, Salt River presented evidence that its assets were worth less than the judgment because they were not readily subject to liquidation.