366 P.3d 583

**WELLS FARGO BANK N.A., Petitioner,**

v.

**The Honorable Joshua ROGERS, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Robert G. Hoag Revocable Living Trust Dated July 15, 1992; Robert G. Hoag and Jane Doe Hoag, Husband and wife; Robert G. Hoag, individually and as Trustee of Robert G. Hoag Revocable Living Trust Dated July 15, 1992, Real Parties in Interest.**

No. 1 CA–SA 15–0271.

Court of Appeals of Arizona, Division 1.

Jan. 28, 2016.

Jaburg & Wilk PC, By Roger L. Cohen, Kathi M. Sandweiss, Phoenix, Counsel for Petitioner.

Wallin Hester PLC, By Chad A. Hester, Gilbert, Counsel for Real Parties in Interest.

Judge PATRICIA K. NORRIS delivered the opinion of the Court, in which Presiding Judge DONN KESSLER and Judge KENT E. CATTANI joined.

## OPINION

NORRIS, Judge:

¶1 Arizona Revised Statutes ("A.R.S.") section 12–2108 (Supp. 2015) and the provisions of Arizona Rule of Civil Appellate Procedure 7 ("Rule 7") that track this statute limit the amount of a bond a party must furnish to stay the enforcement of, or execution on, a judgment. The dispositive issue in this special action is whether the statute and the matching provisions in Rule 7 bar a superior court from taking other steps to preserve the status quo or the effectiveness of a judgment it has stayed pending appeal. We hold they do not.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Between 1994 and 2000, real party in interest Robert G. Hoag established three irrevocable charitable remainder unitrusts and appointed himself trustee for each trust. Each trust obligated the trustee to pay Hoag, during his life, a percentage of the "net fair market value" of the trust assets as of a specified date during each taxable year. Each trust also contained a "spendthrift" provision that prohibited trust assets from becoming liable for the debts of a trust beneficiary (including Hoag), prevented trust assets from being seized by any creditor of a beneficiary, and barred any beneficiary from assigning, transferring, or encumbering his or her interest in the trust estate or income produced by the trust estate.

¶3 In November 2012, Petitioner Wells Fargo Bank, N.A. obtained a default judgment in the principal sum of $2,533,169 against Hoag and a revocable living trust he had established in 1992 (collectively, "Hoag"). Hoag did not appeal the default judgment. Subsequently, Wells Fargo attempted to enforce the default judgment and served third parties with post-judgment subpoenas for the production of documents concerning the trusts and distributions made by the trusts.

Hoag objected to the subpoenas, arguing the spendthrift provisions protected the trust assets and, accordingly, Wells Fargo was not entitled to the documents it had subpoenaed.

¶4 On February 4, 2014, Hoag resigned as trustee, and appointed a corporation organized under the laws and operating out of the Bahamas as successor trustee. The successor trustee also objected to Wells Fargo's post-judgment discovery efforts, asserting the spendthrift provisions prohibited Wells Fargo from holding the trusts liable for Hoag's debts. Accordingly, the successor trustee continued to make distributions to or for the benefit of Hoag. Thus, for example, in April 2014, the successor trustee distributed $30,000 to or for the benefit of Hoag ($9,000 to Hoag's former wife for spousal maintenance, $9,000 to pay property taxes and insurance on a home Hoag owned, and $14,000 directly to Hoag).

¶5 In June 2014, Wells Fargo sued Hoag, the successor trustee, and the trusts and alleged Hoag had fraudulently concealed his assets by transferring them to the trusts. Additionally, Wells Fargo petitioned for declaratory relief and requested the superior court to hold the spendthrift provisions invalid. The superior court granted Wells Fargo partial summary judgment and declared the spendthrift provisions "invalid and ineffective" as to Wells Fargo's claims against Hoag. It also declared Wells Fargo was entitled "to garnish, attach, and otherwise receive income and all present and future distributions [from the trusts] to or for the benefit of Hoag." Additionally, it enjoined Hoag and anyone acting for or on his behalf with notice or knowledge of the judgment from preventing Wells Fargo from garnishing, attaching, executing on or otherwise receiving income from the trusts.

¶6 Hoag appealed the judgment, which the superior court had certified under Arizona Rule of Civil Procedure 54(b). After Wells Fargo petitioned for an order directing Hoag to deliver to it all non-exempt property in his possession, including the distributions he was receiving from the trusts, Hoag moved to stay the judgment without having to provide a supersedeas bond. In requesting a stay without bond, Hoag relied on Rule 7(a)(4), a

procedural rule that governs supersedeas bonds, and which tracks the provisions of A.R.S. § 12–2108. That statute—which applies to civil judgments "under any legal theory"—limits the amount of the bond "necessary" to stay the enforcement of a judgment (subject to certain exceptions) to the "lesser of" the total amount of damages awarded (excluding punitive damages), 50% of the appellant's net worth, or $25 million ("the bond formula"). Hoag argued that because the judgment did not award any damages, the amount of the bond required to stay the judgment under the bond formula was zero and thus he was entitled to have the judgment stayed without bond pending his appeal.

¶ 7 Although Wells Fargo did not object to Hoag's request for a stay, it objected to his request for a stay without bond, arguing that the bond formula set out in the statute and in Rule 7(a)(4) (collectively, "the statute/rule") applied only to money judgments and not judgments awarding declaratory or injunctive relief. Because the successor trustee was continuing to make distributions to Hoag, Wells Fargo asked the superior court to condition any stay on Hoag posting a $360,000 bond ($30,000 per month × 12; *see supra* ¶ 4). Alternatively, it asked the superior court to require Hoag to place all distributions from the trusts into an escrow account pending resolution of his appeal.

¶ 8 The superior court rejected Wells Fargo's argument that the bond formula applied only to money judgments. Accordingly, it stayed the judgment without bond.

## SPECIAL ACTION JURISDICTION AND THE DISPOSITIVE ISSUE PRESENTED

¶ 9 In its original petition for special action relief, Wells Fargo principally argued, as it did in the superior court, that the bond formula in the statute/rule applies only to money judgments, and therefore, the superior court should have required Hoag to post a supersedeas bond "in an appropriate amount" to stay the judgment pending his appeal. Because Wells Fargo also argued the statute/rule did not bar a superior court from entering other orders to maintain the status quo or to secure its rights under the judgment, we asked the parties to file supplemental briefing addressing whether the statute/rule applied to the alternative escrow arrangement Wells Fargo had proposed.

¶ 10 Having reviewed the parties' briefing, and in the exercise of our discretion, we accept special action jurisdiction. The dispute between the parties regarding the scope of the statute/rule's bond formula presents an issue of law of statewide importance. *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 166, ¶ 9, 83 P.3d 1103, 1107 (App.2004). Whether the statute/rule's bond formula applies only to money judgments is not, however, an issue we must decide in this special action. Instead, the narrower and dispositive issue before us is whether the statute/rule's bond formula prevents a superior court from entering orders to preserve the status quo or the effectiveness of a judgment it has stayed pending appeal as authorized by Rule 7(a)(2). Answering that question, we hold the statute/rule's bond formula does not prevent the superior court from entering orders to preserve the status quo or the effectiveness of its judgment when staying a judgment pending appeal. Accordingly, we vacate the superior court's decision that A.R.S. § 12–2108 applies to all judgments and direct it to consider whether the escrow arrangement proposed by Wells Fargo or some other arrangement would be appropriate to preserve the status quo or the effectiveness of the judgment it has stayed pending Hoag's appeal.

## DISCUSSION

¶ 11 In 2011, the Legislature passed A.R.S. § 12–2108, and thereafter, the Arizona Supreme Court amended Rule 7 (effective January 1, 2012) to track the statute's bond formula. As we pointed out in *City Center Executive Plaza, LLC v. Jantzen*, 237 Ariz. 37, 41, ¶ 10, 344 P.3d 339, 343 (App.2015), A.R.S. § 12–2108 and the tracking language in Rule 7 "changed the standards" for determining the amount of a supersedeas bond. The bond formula adopted in the statute/rule marked a significant departure from the prior standards that had governed supersedeas bonds. *Id.* at ¶ 9; *see also Salt River Sand*

*& Rock Co. v. Dunevant,* 222 Ariz. 102, 213 P.3d 251 (App.2009). Section 12–2108 does not, however, address other matters concerning stays pending appeal.

¶ 12 Although the supreme court amended Rule 7 to track the statute's bond formula, it left in place the provision in Rule 7 that authorized a superior court to make further orders to preserve the status quo or the effectiveness of its judgment. That provision—which the supreme court included in Rule 7(a)(1) when it first promulgated the Arizona Rules of Civil Appellate Procedure in November 1977 (effective January 1, 1978)—read as follows: "The court may make any further order, other than or in addition to the bond, appropriate to preserve the status quo or the effectiveness of the judgment." And although the supreme court amended Rule 7 in 2014 (effective January 1, 2015), it made only stylistic changes to this provision. The current version of this provision—now contained in Rule 7(a)(2)—states, "The superior court may enter any further order, in lieu of or in addition to the bond, which may be appropriate to preserve the status quo or the effectiveness of the judgment."

■ ¶ 13 Although Arizona superior courts have been authorized to enter orders to preserve the status quo or the effectiveness of their judgments pending appeal for almost 40 years, the parties have not cited nor have we found any reported Arizona case discussing this grant of authority.[1] But, trial as well as appellate courts in other jurisdictions operating under similar rules have exercised that authority when they have stayed a judgment and the stay would have the effect of depriving the appellee of the benefits of the judgment, or would actually upset the status quo. From these cases we draw a common thread—that a court may appropriately exercise its authority to preserve the status quo, that is, the situation that exists by virtue of

the judgment rendered against the appellant, *see generally Gotthelf v. Fickett,* 37 Ariz. 322, 294 P. 837 (1930) (supersedeas stays future proceedings and does not undo what has already been done; it has no retroactive operation so as to deprive the judgment of its force and authority), or the effectiveness of the judgment when not to do so would effectively and practically deprive the appellee of the benefits it received by virtue of the judgment in its favor.

¶ 14 For example, in *Monarch Construction Co. v. Ohio School Facilities Commission,* 118 Ohio Misc.2d 296, 771 N.E.2d 941 (Ohio Misc.2002), the trial court acted to preserve the status quo even though it had stayed its judgment pending appeal because if it had not done so, the prevailing plaintiff would have lost the benefits of the judgment in its favor pending the appeal. There, the plaintiff, a construction company, sued the defendants and asked the court to preliminarily enjoin them from using a different contractor to complete a school construction project. The trial court granted the preliminary injunction, and the defendants appealed. As required under the controlling procedural rules, the trial court stayed its judgment without bond pending the appeal. The defendants then argued that because of the stay, they were entitled to continue the construction project using the other contractor. The court rejected that argument, explaining that "the effect of a nondiscretionary stay pending appeal ... should not be to undo the trial court's injunction before it can be determined by a higher court whether it was issued wrongfully." *Id.* at 944. To preserve the status quo, the court barred the defendants from going forward with the construction project pending the appeal, while precluding the plaintiff from taking any action to force the defendants to rebid the project. *Id.*

---

**1.** Rule 7(a)(2), and the similar authority granted to appellate courts by Rule 7(c), stems from the Arizona Constitution and state statute. Ariz. Const. art. 6, § 5 (supreme court "shall have" power to issue injunctions "and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction"); A.R.S. § 12–123 (superior court "shall have all powers and may issue all writs necessary to the complete

exercise of its jurisdiction"); A.R.S. § 12–120.21 (court of appeals shall have jurisdiction "to issue injunctions and other writs and orders necessary and proper to the complete exercise of its appellate jurisdiction"); *see also Ariz. Podiatry Ass'n v. Dir. of Ins.,* 101 Ariz. 544, 548–49, 422 P.2d 108, 112–13 (1966) (with certain exceptions, jurisdiction of Arizona Court of Appeals is concurrent with that of Arizona Supreme Court).

¶ 15 Several federal courts have imposed protective conditions to balance the hardships on the appellee when the stay pending appeal barred the appellee from attempting to enforce the judgment. *See e.g., Cooks v. Fowler,* 459 F.2d 1269, 1272–73 (D.C.Cir. 1971) (affirming condition of stay requiring tenant appealing judgment to deposit funds in court registry pending appeal); *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Rep.,* 240 F.Supp.2d 21, 23 (D.D.C.2003) (conditioning stay pending appeal on appellant seeking expedited appeal). *See also Tribal Vill. of Akutan v. Hodel,* 859 F.2d 662, 663 (9th Cir.1988) (noting that Fed. R. Civ. P. 62(g), which preserves power of appellate court to "suspend, modify, restore, or grant an injunction during the pendency of an appeal or to make any order appropriate to preserve the status quo or the effectiveness of the judgment subsequently to be entered," along with Rule 62(c), which allows district court to "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights" in an appeal in an injunction case together " 'codif[y] the inherent power of courts to make whatever order is deemed necessary to preserve the status quo and to ensure the effectiveness of the eventual judgment.' " (internal citations omitted)).

¶ 16 In short, when a superior court stays its judgment pending appeal, it nevertheless is entitled to take appropriate action to preserve the status quo or the effectiveness of its judgment. In a practical sense, what this means is a superior court may ensure that, pending the appeal of the stayed judgment, the appellee will not lose the benefits of its judgment and thereby suffer real, not hypothetical or speculative, harm.

¶ 17 Here, the judgment invalidated the spendthrift provisions of the trusts and enjoined Hoag and others acting for him and with notice of the judgment from preventing Wells Fargo from receiving distributions from the trusts. The superior court stayed the judgment and Wells Fargo has alleged that, as a consequence of the stay, Hoag has continued to receive distributions from the successor trustee. Assuming this to be the case, the stay has enabled Hoag to prevent Wells Fargo from pursuing these distributions even though the judgment authorized Wells Fargo to receive them. Not only has the stay upended the status quo that existed by virtue of the judgment, but it has jeopardized the effectiveness of the judgment if Wells Fargo and not Hoag prevails in the pending appeal. Under these circumstances and pursuant to Rule 7(a)(2), the superior court was entitled to consider whether the escrow arrangement proposed by Wells Fargo or some other arrangement would be appropriate "to preserve the status quo or the effectiveness of the judgment."

## CONCLUSION

¶ 18 We vacate the superior court's decision that A.R.S. § 12–2108 applies to all judgments and direct it to consider whether, under the circumstances presented here, the escrow arrangement proposed by Wells Fargo or some other arrangement would be appropriate to preserve the status quo or the effectiveness of the judgment stayed pending appeal.